THE PHILADELPHIA MORTGAGE AND TRUST COMPANY
v. J. P. HARDESTY et al.

No. 13,512.   (75 Pac. 1115.)

SYLLABUS BY THE COURT.

1. PRINCIPAL AND AGENT—*Authority to Sell Real Estate.* An
owner of real estate which had been leased until the following
March for $50, payable October 1, wrote in September to his agent,
authorizing a sale of the property for $1200, adding: "It is un-
derstood that this year's rents will come to us." *Held*, that this
was, in effect, an instruction to sell subject to the lease, and did
not authorize a sale for $1200 without a reservation of the rent.

2. DAMAGES—*Agreement to Sell Real Estate.* Where, in the course
of correspondence regarding the sale of a tract of land, an offer is
made and accepted, but the buyer seeks to attach new conditions,
and notifies the seller that unless these conditions are agreed to
he will not buy, this, as to the buyer, is a reopening of the nego-
tiations, permitting the seller also to impose new conditions, and
the buyer cannot recover damages for the seller's refusal to con-
vey without showing a new agreement reached after such reopen-
ing.

Error from Harper district court; P. B. GILLETT,
judge. Opinion filed March 12, 1904. Reversed.

*T. A. Noftzger*, for plaintiff in error.

*E. C. Wilcox*, for defendants in error.

The opinion of the court was delivered by

MASON, J. : In September, 1901, the Philadelphia
Mortgage and Trust Company, a corporation, was the
owner of a half-section of land in Harper county,
which had been leased to J. P. Hardesty for the year
expiring March 1, 1902, for the sum of fifty dollars,
due October 1, 1901, for which Hardesty had given
his note. J. W. Clendenin and R. H. Lockwood, of
Wichita, composing a firm known as J. W. Clendenin
& Co., were agents of the Philadelphia company

with respect to this and other lands, but had no authority to effect a contract of sale, except upon terms to be submitted to and approved by their principal. On September 3, 1901, Hardesty wrote a letter to Clendenin & Co., relative to a purchase of this half-section, and thus began a correspondence on the subject, which continued until October 9, and which he claims resulted in a valid contract for such purchase. The Philadelphia company denied that a contract had been made, and refused to convey the land, whereupon Hardesty sued it and Clendenin & Co. for damages for such refusal, and recovered a judgment against the corporation, which it is the purpose of this proceeding to review.

The case was sent to the jury upon two principal issues of fact: First, whether Clendenin & Co. had made an agreement with plaintiff for the sale of the land; and second, if so, whether they had authority to bind the corporation to such agreement. The jury found specially that the agents sold the property to plaintiff without reserving the rent; that they had no authority to make such a sale, but that the corporation had ratified it. There was no evidence of ratification, and therefore these findings would, of themselves, require a reversal if these issues were properly submitted to the jury. But there was no conflict of testimony upon these matters and all substantial evidence affecting them was in writing. Whether the various letters and telegrams established the agency and the contract was purely a question of law. Whatever authority the agents had was derived from a letter written to them by the corporation on September 16, giving a statement of terms on which a sale might be made, concluding with the words, "It is understood that this year's rents will come to

us.'' The owner of the land, having leased it until the following March, was obviously not in a position to make a contract for immediate sale, without reservation. It was necessary that the matter of possession and rent should be adjusted between buyer, seller, and tenant. The owner did not know that the proposed buyer was the tenant. In view of this situation, it must be held that the words just quoted from its letter constituted, in effect, an instruction to its agents that the sale must be made, if at all, subject to the lease. At any rate, they so limited the other terms of the letter that no authority was granted to make the kind of sale the jury found was made; that is to say, a sale without a reservation of the season's rent. The judgment must on this account be reversed, unless it can be said that this finding was immaterial because outside the issues; that the agents did make with plaintiff such a contract as was within their authority; that the plaintiff was ready and willing to carry it out, and that the defendant refused to do so.

The correspondence between Hardesty and Clendenin & Co., regarding the proposed sale, included at least ten letters and telegrams on each side. Various matters of difference arose; various conditions were sought to be imposed and afterward withdrawn, while in the meantime other questions had arisen. Intelligently to present the question whether at any time the minds of the parties met upon all substantial matters and thus completed a contract, it is necessary to review these writings in some detail.

The negotiation was begun by Hardesty writing to Clendenin & Co., asking the price of the land. They replied, saying that the price was $1200, to be paid half in cash and half on time, at six per cent. interest.

Hardesty then made an offer of $1100, $600 down and $500 on time. This offer the agents submitted to the owner, who, in the letter already referred to, authorized a sale (subject to the rent, as before noted) at $1200, half in cash and half by mortgage. This offer was reported to Hardesty by Clendenin & Co., who, however, stated that the rate of interest required was seven per cent. instead of six, the rate mentioned in their correspondence with their principal. Hardesty replied September 20, with a telegram : "Will take land at twelve hundred, six hundred cash six on time, six per cent. interest, as agreed in your letter. Answer at once." At this stage of the proceedings, it is clear that there was no contract. But Clendenin & Co. immediately sent the following telegram to Hardesty : "Will sell you the land as per telegram 20th instant." At this point, therefore—that is, upon the sending of the latter telegram—it may be said that there was a definite proposal and acceptance, constituting a completed contract.

The matter of this lease and rent not having been mentioned, the agents may be said to have agreed that a warranty deed should be delivered at once. This would leave the grantor liable to the grantee for the fair value of the use of the land from the time of sale to the ensuing March—in effect accomplishing a division of the season's rent between the buyer and seller, an arrangement presumably equitable but one not authorized by the agent's instructions. Had Hardesty at this point offered to carry out the contract according to its very terms, he doubtless would have had a right to insist upon its performance, so far as the agents were concerned.; but this contract, nothing yet having been stated to the contrary, contemplated the payment of the purchase-price at the home of the

vendor or that of its representatives. ( *Greenawalt v. Este*, 40 Kan. 418, 10 Pac. 803.) It was incumbent upon the purchaser, in order to avail himself of the contract, to comply or offer to comply with that condition. Instead of doing so, on the same day, the 20th, he wrote to Clendenin & Co., enclosing a check for $100 and asking that the deed be made to M. Hardesty (in itself a new condition) and sent to the Bank of Hazelton. These additional requirements authorized the agents of the vendor to consider the matter still open and to impose new conditions on their own part. ( *Hinish v. Oliver*, 66 Kan. 282, 71 Pac. 520 ; *Egger v. Nesbitt*, 122 Mo. 667, 27 S. W. 385, 43 Am. St. Rep. 596.) On the same day they wrote to Hardesty, insisting upon seven per cent. as the rate of interest, asking to whom the deed should be made, and offering to send the papers to Charles E. Morris, at Anthony. The controversy as to the rate of interest was finally settled by an agreement to pay the full purchase-price in cash. In their letter of the 20th, Clendenin & Co., for the first time, expressed a willingness to make a deed to any one other than Hardesty himself. This letter, therefore, marks the first period in the negotiations when it can be claimed that a contract for a deed to M. Hardesty, the wife of J. P. Hardesty, was under consideration, and to this letter was added : "Of course, you understand that owner expects you to pay the rent agreed on for the land this year, and will have to be paid at the same time that you close up the sale." This was the first time that Clendenin & Co. had mentioned this matter in their correspondence with Hardesty, but, late as the requirement was made, it was within time, since a final agreement had not yet been reached.

On September 23 Hardesty wrote to Clendenin &

Co. about the matter of interest, offering to pay the full amount down, and continued:

"You can make deed to M. Hardesty, as instructed in former letter, and send it to the Bank of Hazelton, Kansas, and on receipt of it will pay you $1100. With the $100 you already have got, will make the $1200. So you see you have all cash instead of any time, which will suit you better. Of course, I demand an abstract, deed, clear of all encumbrance. Now, if this don't suit you, return the check for $100 and the trade is off."

The requirements insisted upon in this letter as to sending the deed to the Bank of Hazleton and furnishing an abstract had never been agreed to by Clendenin & Co., and it is too clear for argument that whatever may have been the earlier condition of the negotiation, at the time this letter was written there was no contract between the parties. Clendenin & Co., on September 24, notified Hardesty that they had sent the deed to Morris, at Anthony, together with the note given for the rent. Morris was instructed to deliver the deed only upon the payment of the note as well as of the purchase-price. On September 26 Hardesty wrote as follows:

"Just received a letter from one Charley Morris. Who is Morris and what figure does he cut in our deal, ordering me to get my money out of the Bank of Hazelton and carry it around over the country and to hunt him up and take up deed? I stated in my letter to you that your money was in the Bank of Hazelton; to send the deed there and collect your money. I have n't the time to go and hunt up other parties in this deal unless there is something in it. My time is worth money to me at present. Send deed to the Bank of Hazelton and I will fix up the matter. Hoping to hear soon."

Hardesty, however, did call upon Morris and offer

to pay $1100 for the deed, but refused to pay the note. He said to Morris that he did not consider that there was anything due on the note ; that he was entitled to the land for $1200, clear of all encumbrances.   On the receipt of Hardesty's letter of the 26th, Clendenin & Co. wrote to him that they would direct Morris to send the papers to the Hazelton bank.  But on the next day they wrote him again, saying that, having heard from Morris that he had declined to pay the amount demanded for the note and deed, they would leave the papers at Anthony, and, unless they were taken up by the following Monday, would order their return.   In this letter the matter of the rent is discussed at length.   On October 2 Hardesty wrote that he had offered Morris $1100 for the deed.   In this letter he did not refer to the note.   On the same day Clendenin & Co. wrote to him, again refusing to send the papers to the Bank of Hazelton and giving him until October 6 to take them up at Anthony.   On October 7 Hardesty wrote to Clendenin & Co. as follows :

· "I have just been over to the Bank of Hazelton and find the deed isn't there yet for the Davis land.   I received a letter from you advising me to go to Hazelton and take up those papers.   I want you to understand that I will not have anything to do with Morris in this matter.   Now, I will give you until the 15th of the month to send the deed to the Bank of Hazelton, as you agreed to do.   I had to borrow part of the money to settle the interest business and it is an expense to me right along.   If you didn't want to sell the land to me for `$1200 clear of all encumbrance, why did you do it?   Or if you didn't intend to send deed to Hazelton at all, why did you say so?   Now, I will refer you to my letter of September 23.   You had a chance then to return my check if you didn't want to sell the place for $1200, which you didn't do, and now you are into it.   You will find $1100 in the Bank

44—68 KAN.

of Hazelton to finish paying for that land, any day between this and the 15th of October."

On October 8 Clendenin & Co. sent Hardesty a check for $50, retaining the remainder of the $100 he had paid them, claiming it upon the rent. On the 10th Hardesty returned their check and began his action for damages.

It thus appears that while at one time the correspondence between plaintiff and the owner's agents showed an offer to buy and an unconditional acceptance, thus making a valid contract, plaintiff himself repudiated this agreement and insisted upon imposing additional conditions; that in the course of the new negotiations which followed, and before a further agreement had been reached, the requirement was made in behalf of the owner that plaintiff should pay the year's rent—in effect that he should take the land subject to the lease; that this demand was never afterward withdrawn and was never acceded to. There was, therefore, no contract that could be enforced in this action, even apart from any question of the authority of the agents to make it. Plaintiff waived whatever rights he might have asserted under the terms of the original agreement, and a subsequent agreement was never reached.

The judgment is reversed and a new trial ordered.

All the Justices concurring.