No. 22,244.

JOHN H. WIGGAM, *Appellant*, v. JOHN SHOUSE et al., *Appellees*.

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Sale of Real Estate—Terms Stated to Agent by Owner—No Authority of Agent to Bind his Principal by Contract.* A written communication from the owner of real estate to an agent stating the terms upon which he would sell, *held* not to amount to an offer at large which would result in a contract whenever any one accepted it; and *further held,* that the agent was given no authority to bind the owner to sell the land to any one. (*Brown v Gilpin,* 75 Kan. 773, 90 Pac. 267; *Schuhmacher v. Lebeck,* 103 Kan. 458, 173 Pac. 1072.)

2. SAME. The owner of real estate in Kansas, residing in Montana, received a telegram from real-estate agents where the land was located, saying, "We have offer of $7,500 for farm. Answer our expense. Letter follows." In answer thereto the owner wired, "Will take $8,000 net cash." The agents wrote the owner stating they had sold the land to plaintiff for $8,000; inclosed a deed to be executed by the owner, with request that he authorize their bank to accept the $8,000 within 15 days, the bank to retain $500 out of which to pay them a commission of $225, and the cost of an abstract showing a marketable title. The balance was then to be paid to the owner. *Held,* that a petition setting forth the foregoing facts in an action by the proposed purchaser against the owner to compel specific performance states no cause of action.

Appeal from Chautauqua district court; ALLISON T. AYRES, judge. Opinion filed December 6, 1919. Affirmed.

*J. E. Brooks,* of Sedan, for the appellant.
*J. A. Ferrell,* of Sedan, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The action was one for the specific performance of an alleged contract for the sale and conveyance of real estate. The court sustained a demurrer to the petition, and plaintiff appeals.

The facts stated in the petition are these: John Shouse and his wife, who are the defendants, reside in Montana. Shouse owns the land in question, which is a farm of 240 acres in Chautauqua county. In January, 1918, he had employed the firm of Spencer & Spencer, real estate and loan agents in Sedan, to procure for him a loan on the farm. The plaintiff is the in-

spector of real estate for the mortgage company, and in the latter part of April, 1918, was sent to Chautauqua county for the purpose of inspecting the value of the farm as security for the contemplated loan. While he was there for that purpose he learned that the farm was for sale, and verbally offered to Spencer & Spencer the sum of $7,500 cash for it. They at once wrote Shouse the following letter:

"There are several requirements about your abstract that we have not secured yet. We are going down in that country in a day or two and complete it, when you can have the money. We understood that you want to sell this farm and was asking something like $8,000.00. We took a man to look at it, who stated that he would give $7,500.00. We thought we would wire you and it might be that you would want to accept that sale before taking the mortgage money. Upon receipt of this communication wire at our expense if you want to sell and if you want to accept $7,500.00."

On the same date they wired him:

"Abstract not quite complete. We have offer of $7,500.00 for farm. Answer our expense. Letter follows."

On June 1, 1918, Spencer & Spencer received from Shouse a telegram as follows:

"Will take $8,000.00 net cash or $7,500.00 and keep the crop or complete the loan."

Spencer & Spencer communicated the contents of the telegram to the plaintiff, who at that time accepted the defendant's proposition to purchase the land for the sum of $8,000, purchaser to receive landlord's share of crop, and plaintiff verbally informed Spencer & Spencer of such acceptance, "and verbally agreed to pay said sum of $8,000.00 upon receipt of a deed to said land from said John Shouse." On June 12, Spencer & Spencer wrote to Shouse a letter, portions of which are here quoted:

"I am inclosing to you two forms of warranty deed, exactly alike, except that one shows the true consideration, $8,000.00. The other shows $10,000.00 consideration, which the purchaser has asked us to insert for the reason that he wants to secure a large loan upon the farm and it will help him to do so by showing a larger consideration. However, if you have any extraordinary objection to this you can use the deed showing the true consideration. We are also inclosing to you a letter to be signed by you and mailed with the deed to the First National Bank of Sedan, Kansas. .. . . We have worked hard on this matter and we hope that the whole transaction will be satisfactory with you. We note

Wiggam v. Shouse.

that you did not contemplate paying us a commission from your telegram. However, we are selling this to Mr. Wiggam for $8,000.00. After we got down into that country he heard that you were offering it for $8,000.00 and consequently there was no possible chance for us to edge up on him for a commission. . . . We have arrived at the $225.00 commission by taking 5% on the first thousand and 2½% on the balance, which has been customary in this county as long as we can remember."

The letter which they asked him to send to the bank at Sedan reads:

"Inclosed find deed covering my farm in Chautauqua County, which you may deliver to John H. Wiggin, the grantee, upon payment into your bank the sum of Eight Thousand ($8,000.00) Dollars, Seventy-five Hundred ($7,500.00) dollars of which is to be transmitted to me at once and remaining Five Hundred ($500.00) Dollars to be held by you until such time as the abstract of title is approved by J. A. Ferrell, Attorney. You are further instructed that I agree to furnish an abstract showing marketable abstract of title and that you shall first deduct the necessary expenses of preparing and perfecting said abstract making the same showing marketable in me and you are further instructed to deduct and to pay Spencer & Spencer as a commission the sum of Two Hundred Twenty-five ($225.00) Dollars. The balance to be remitted to me when the abstract is approved. It is understood that the Five Hundred ($500.00) Dollars be left in your bank at the present for the purpose of paying expenses of showing marketable title and for the purpose of paying commission. After these items are paid, balance to be remitted to me. You are further instructed to give the purchaser 15 days time within which to pay into your bank said Eight Thousand ($8,000.00) Dollars. Possession of real estate to be delivered at that time. It is understood that my share of all crops or benefits to be received by me from said real estate for the year 1918 is to belong to purchaser."

On June 24, 1918, plaintiff, in compliance with his agreement to purchase, deposited with Spencer & Spencer a certified check for $8,000 on the First National Bank of Sedan. On the same day, Spencer & Spencer sent to Shouse the following telegram:

"Wiggam left Eight Thousand Dollars with me to close deal. Please forward papers."

The facts upon which plaintiff predicates his cause of action are thus stated in the petition:

"Upon the acceptance of said proposition by this plaintiff and the communication thereof to the said John Shouse by the firm of Spencer & Spencer on June 12, 1918, which was received by the said John Shouse not later than June 16, 1918, said contract of purchase and sale of the real estate herein described became and was complete."

There are two sufficient reasons, either of which prevents the plaintiff from maintaining his action upon the facts stated in the petition. *First,* he had no contract with the defendant. The telegram to Spencer & Spencer did not authorize them to make a contract binding Shouse to sell to plaintiff or to any one else. It amounted merely to a listing of the property for sale upon the terms stated.

It has often been held that a communication in writing by the owner of real estate to an agent, stating the price and terms upon which he will sell real estate, such as the telegram in question, amounts to a listing of the land with the agent for the purpose of finding a purchaser ready, willing and able to buy the land for the price and on the terms stated. It is not essential, of course, that every detail of the transfer should be in writing; but the listing of real estate in this manner gives no authority to the agent to bind the owner to sell the land to any one. If the agent produce a purchaser who is ready, willing and able to take the property on terms satisfactory to the owner, he has earned his commission (where there was a contract, implied or otherwise, for a commission) ; and if he is authorized to retain all the consideration above a certain price, and procures a purchaser ready, able and willing to buy on terms agreeable to the owner, who then refuses to sell, the agent may recover the difference between the price named and the amount which the proposed purchaser agreed to pay. Thus, in *Schuhmacher v. Lebeck,* 103 Kan. 458, 173 Pac. 1072, the agent attempted to purchase the land for himself without disclosing to the owner that he was the buyer. The owner's letter to the agent stating the terms upon which he would sell was held not to amount to an offer to the public at large which would result in a contract whenever any one accepted it; that the plaintiff was given no authority to bind the defendant to sell the land to any one. In that case, the defendant stated his terms to be "cash in hand for $2,000." It was said in the opinion:

"If he (plaintiff) had produced a buyer, say at $2,100 cash, the defendant could doubtless have been required to pay him a commission of $100 (*Culbertson v Sheridan,* 93 Kan. 268, 144 Pac. 268), but could not have been compelled to part with the property. (*Brown v. Gilpin,* 75 Kan. 773, 90 Pac. 267; 17 L. R. A., n. s., 210.)" (p. 459.)

If Spencer & Spencer had procured a purchaser ready, able and willing to take the property at $8,000 net cash, Shouse could nevertheless have refused to convey to the proposed purchaser, and he might have said to the agent, "I have changed my mind about selling; I have no contract with this purchaser. You have performed your part of the contract with me and are entitled to a commission amounting to the difference between $8,000 and the price which the proposed purchaser agreed to pay."

The question whether the listing of real estate by the owner with an agent to sell at a certain price, authorizes the agent to execute a written contract, binding upon the owner, is quite fully discussed in the case of *Brown v. Gilpin*, 75 Kan. 773, 90 Pac. 267 (cited with approval in *Schuhmacher v. Lebeck*, supra), and it was held that the authority of the agent in such cases is limited to finding a purchaser satisfactory to the principal, and that the transaction does not amount to giving present authority to such agent to conclude a binding contract for a sale. The recent case of *Cox v. Chalfant,* ante, p. 127, is directly in point on this proposition. The owner of a tract of land, in that case, in answer to an inquiry wrote a real-estate agent describing the property which he said he would sell "for $2,800 net to me." The writing was held not to constitute authority for the agent to bind the owner by a written contract to sell to a third party, but merely amounted to a listing of the property for sale on the terms set forth, and it was held that a real-estate broker or agent has no implied authority to bind the principal by signing a contract of sale. (See cases cited in the opinion.)

The telegram stating upon what terms Shouse would sell conferred no authority upon Spencer & Spencer to make any contract in his name, verbal or in writing.

*Second,* if the offer embraced in the telegram from Shouse had been made directly to the plaintiff himself, and plaintiff had signed the telegram and letter of June 12, they would not have constituted an acceptance of the terms stated in the telegram from Shouse. Apparently, Shouse was not satisfied with the new conditions imposed upon him by the alleged acceptance, as he seems to have made no reply to the letter

and telegrám of June 12. It is quite clear, in our opinion, that if the communications had been carried on directly between the plaintiff and Shouse, it could not be said that the minds of the partes met on the same proposition. (*Trust Co. v. Hardesty*, 68 Kan. 683, 75 Pac. 1115; *McCarter v. Rogers*, 104 Kan. 204, 178 Pac. 621.) The statement that the owner would accept $8,000 net cash meant what it said; not that sum, less an agent's commission of $225 and expenses of perfecting an abstract, which should show a marketable title; not $8,000 deposited in a bank at Sedan to remain there for 15 days, subject to the conditions imposed, but $8,000, presumably payable to the owner where the telegram was sent from and where he lived.

In *Greenawalt v. Este*, 40 Kan. 418, 19 Pac. 803, which was an action for specific performance, a demurrer to the petition was sustained. The plaintiff lived in Atchison. The owners of the land lived in Cincinnati, Ohio. The petition alleged the written offer to sell at a certain price and an acceptance, to which, however, the plaintiff added the statement that he had placed the purchase money in a bank at Atchison to the defendant's credit and requested them to send the deed there at once, when the money would be paid. It was held that under the defendants' offer to sell, the purchase money was due at their office in Cincinnati, Ohio, or to them personally, and not at a bank in Kansas.

The acceptance of an offer must be unconditional. If it contain new terms and conditions, they must be agreed to by the one who made the original offer before a contract is complete. (*McCarter v. Rogers*, supra.)

It follows from what has been said that the judgment is affirmed.