No. 29,575.

L. M. Pope, *Appellant*, v. Nettie Pine, *Appellee*.

(293 Pac. 396.)

Opinion filed December 1, 1930.

*Robert Garvin* and *Evart Garvin*, both of St. John, for the appellant.

*George Getty*, of Syracuse, *C. E. Vance*, *Clifford R. Hope* and *A. M. Fleming*, all of Garden City, for the appellee.

The opinion of the court was delivered by

Jochems, J.: The plaintiff filed a petition seeking damages from the defendant for breach of an alleged contract to sell certain real estate to plaintiff. The court sustained a demurrer to plaintiff's petition, and from that order appeal is taken to this court.

The petition alleged, in substance, that the plaintiff was a resident of Pratt, Kan.; that the defendant was a resident of Waterloo, Iowa; that defendant owned certain lands in Hamilton county, Kansas, described in the petition; that plaintiff made a contract with defendant to buy the land at $8 per acre. The petition then set up a series of letters and telegrams which plaintiff alleged evidenced the contract. The letters and telegrams are as follows:

*"Nettie Pine, Waterloo, Iowa:*
                                    "Pratt, Kan., December 11, 1928.

"Dear Madam—I see by the records of Hamilton county, Kansas, that you own all of section 15, township 25, range 42.

"I just sold some of my land to a party near yours and he wants to get some to break out and farm. He is a good farmer, has farmed some of my land over in Grant county for years and is reliable and you don't have to watch him to get your share of the crop.

"If you should want part or all of yours broke out he will do it for $2 per acre and rent it and put it to wheat next fall and give you one-fourth of the crop delivered to market.

"Should you want to sell your land I shall be glad to have your best cash price; there is not much selling at present, but could sell some if the price is cheap enough.                    Very truly yours,      L. M. Pope."

The defendant returned the above letter to the plaintiff with the following written on the bottom:

"This letter has been mislaid and has just come to my attention. I presume it's too late to do anything in regard to the first part of your letter. However, we would like to sell any or all of our holdings in Hamilton county, including NE¼ 13-25-42, NW¼ 13-25-42, SE¼ 26-26-39. We will sell for $10 an acre. Make us an offer if you have any buyers.

Yours truly,     NETTIE PINE."

Later the plaintiff received a letter written by the daughter of defendant as follows:

*"L. M. Pope, Pratt, Kan.:*                            4-17-29.

"DEAR SIR—My mother, Mrs. Pine, wishes me to say to you that we do not feel that we can afford to sell S½ of 13-25-42 for less than $8 (eight dollars) per acre, net to us. If you are interested at that price, please let us hear from you. We do not own SE¼ of 26-26-39. That was a mistake.

Yours truly,     GENEVIEVE P. KNOX."

The following telegram was then sent by plaintiff to the defendant:

"Will give eight dollars per acre for south half of 13-25-42, Hamilton county, Kansas, if accepted at once. Wire confirmation of sale if accepted or rejected, collect. Must know as have another deal pending.     L. M. POPE."

To this defendant replied by telegram as follows:

"Will accept eight dollars per acre net cash or one-half down remainder in three years, six per cent."

Upon receipt of this telegram the plaintiff wrote the defendant as follows:

*"Mrs. Nettie Pine, Waterloo, Iowa:*                APRIL 20, 1929.

"DEAR MADAM—Your wire received accepting my offer for the south one-half of section 13, township 25, range 42, Hamilton county, Kansas, for eight dollars per acre net to you.

"I notice you state in your wire that you will take half down, the balance three years at 6 per cent. I prefer to buy it that way and think that I will be able to buy some more of your land just a little later on, as I have some more money coming in just a little later on.

"I am inclosing a Kansas form of deed prepared for your signature, and will fix up the mortgage papers and send them to you for your approval. You may send me your abstract on this piece of land, and I will send it out to Hamilton county and have it brought up to date, and if the title is all right, as I have no doubt but what it is, as you perhaps had it examined when you got it, then I will be ready to complete the deal.

"You may send the deed to the Macksville State Bank at Macksville, Kan., as I do some of my business over there, with instructions to them, upon payment of $1,280 in cash and mortgage of $1,280 signed by myself and wife, to turn the deed over to me.

"I will return the abstract to you, as it is customary for it to be held with the mortgage."

Accompanying this letter was a form of note, a form of real-estate mortgage and a form of deed.

Following receipt of the above letter the defendant wrote plaintiff as follows on April 25, 1929:

"As we had given Mr. Geo. J. Downer, of Syracuse, who has been our advisor for many years, the exclusive right to sell our lands in Kansas, we have no authority to sell. You will have to take the matter up with him."

Plaintiff alleged that defendant refused to carry out the contract made as aforesaid and refused to be bound by the same; that plaintiff has at all times been ready, able and willing to carry out the terms of the contract, but that defendant has refused to permit him to do so. That after entering into the agreement with defendant as above set forth and before plaintiff learned of defendant's refusal to perform the contract, and prior to the time he received the letter from the defendant dated April 25, 1929, and relying upon the contract which he had made and that it would be carried out and performed, he found a buyer for the real estate he was to obtain from the defendant, namely, one A. N. Stark, and that Stark offered to purchase the real estate from plaintiff at $15 per acre, or a total of $4,800; that the said Stark has ever since stood ready, able and willing to purchase the real estate at that price and is now ready, able and willing to purchase it at that price, but plaintiff is unable to complete the deal with Stark because of the failure of defendant to perform the contract; that plaintiff has thereby been damaged in the sum of $2,240. Plaintiff also alleged that at the time the defendant breached the contract the land was of the fair and reasonable, actual and market value of $15 an acre, or a total of $4,800.

The petition prayed for recovery of the damages sustained in the amount of $2,240 with interest at six per cent from April 25, 1929, and for costs.

To the petition was attached exhibit A, a form of note; exhibit B, a form of mortgage, and exhibit C, the form of deed, being copies of those inclosed with the letter of plaintiff under date of April 20, 1929.

Defendant filed a general demurrer to the petition which, on October 25, 1929, was sustained by the district court, and appeal was thereafter duly perfected to this court.

Appellant makes the contention that the court erred in sustaining the demurrer for the reason that there was a complete contract between the parties; that the contract consisted of the offer to sell the real estate made by the defendant through her agent, Genevieve Knox, in the letter of April 17, 1929, and the telegram accepting that offer sent by plaintiff in answer to that letter; that the telegram plaintiff received from defendant confirmed the sale of the land to plaintiff at $8 an acre and offered the suggestion that plaintiff could pay for the land in cash or one-half down and the remainder in three years at six per cent; that the letter of April 20, 1929, from plaintiff to defendant advised defendant how the plaintiff preferred to pay for the land and made suggestions as to the details of closing the transaction and suggested the form of deed, note and mortgage to be used in completing the deal; that the offer made by the appellee in the letter of her daughter, Genevieve Knox, April 17, 1929, was unconditionally accepted by the plaintiff in his telegram to the defendant in reply to that letter; that this telegram did not contain any new terms or conditions and that the contract was thereby completed.

Appellant further argues that the letter of April 20, 1929, written to the defendant did not withdraw the offer or attempt to impose any new terms or conditions, but merely made suggestions as to the manner and method of completing the transaction.

In support of his position the appellant cites 39 Cyc. 1199, which reads:

"If an offer is accepted as made, the acceptance is not conditional and does not vary from the offer because of inquiries, whether the person making the offer will change its terms, or as to future acts, or because of the expression of a hope, suggestions, etc., or because of the insertion of an immaterial condition. Nor is an acceptance conditional or variant from the offer where it contains a term or condition which is a mere reiteration of one expressed or implied by law in the offer, even though special stress is laid thereon."

Appellant also cites *Long v. Needham*, 37 Mont. 408, 96 Pac. 731; *Turner v. McCormick*, 56 W. Va. 161, 49 S. E. 28, 67 L. R. A. 853; *Kreutzer v. Lynch*, 122 Wis. 474, 100 N. W. 887; *Curtis Land Co. v. Interior Land Co.*, 137 Wis. 341, 118 N. W. 853.

In the latter case it was held:

"Where the letter of acceptance contains a mere suggestion or request that payment be made at a particular place, but such request is not a condition attached to the acceptance, it does not amount to an attempt to vary the terms of the offer to sell and will not defeat an action for specific performance." (Syl. ¶ 6.)

"A statement in a letter accepting an offer to sell lands: 'If it is just as satisfactory to you, will you please send your deed to (a specific bank) for collection,' is a mere suggestion or request, and not an attempt to impose a condition not in consonance with the offer." (Syl. ¶ 13.)

Appellant also calls attention to the case of *McAdam v. Leak*, 111 Kan. 704, 208 Pac. 569. In that case the letter of acceptance contained the following statement:

"You may send your abstract out to Syracuse and have it brought down to date and forward it to me and I will examine it and if it is satisfactory will draw a deed and send to you for your signature." (p. 706.)

The court in discussing this said:

"The statement in the plaintiff's letter that he would draw a deed and send it to the defendant for her signature was a mere offer to perform the clerical work of preparing a deed for execution. It did not amount to a reservation of a right to require a particular form of conveyance. Nothing having been said to the contrary, the parties are deemed to have contemplated the execution of a deed in the usual form.

"It is contended that the minds of the parties did not meet upon all the essential matters of the contract because nothing had been said as to when and where the purchase price was to be paid. In that situation the defendant could have insisted upon receiving it at her residence in exchange for the deed as soon as a reasonable time had elapsed for an examination of the abstract. She did not break off the deal, however, because of any question of time or place of payment, or of the abstract or deed, but upon the ground that the price was too low." (p. 706.)

In reply to the foregoing the appellee makes the contention that the contract was never completed; that there was no unconditional acceptance of the offer, and that it did not reach the stage where a contract had been made which would be of any binding force on the appellee. Counsel for appellee points out that in the correspondence there was no provision for a forfeiture clause in the event of nonfulfillment; that time was in no manner of the essence of the contract and that the plaintiff could not have been forced either to pay the purchase price or surrender his rights under the alleged contract until the defendant had hunted him up, tendered him deed, demanded payment and then waited a reasonable time for payment before attempting to rescind the contract; that the defendant lives in Iowa and the plaintiff in Kansas and the delay and expense incident to such a tender would have been considerable; that the law does not impose any such hardship on one who quotes a price on his property without being put to the expense and burden of collecting the purchase price by suit or having to go through

expensive proceedings to enable him to rescind the contract; that an offer to sell for cash can only be accepted by paying over the cash before the offer is withdrawn. Appellee further contends that the letter written by plaintiff on April 20, 1929, qualified the acceptance of plaintiff by agreeing to close the deal only in case the abstract showed good title and by demanding an abstract which up to that time had not been mentioned, and demanding that the deed be sent to the Macksville bank, concerning the financial responsibility of which defendant probably knew nothing; that when defendant received this letter it was incumbent upon her either to call a halt in the negotiations or comply with plaintiff's demands. Appellee further states that if no binding contract had been made, then it makes no difference what her motive was for refusing to continue negotiations. (*McCarter v. Rogers*, 104 Kan. 204, 178 Pac. 621.)

The early case of *Greenawalt v. Este*, 40 Kan. 418, 19 Pac. 803, was somewhat similar to the case now before the court. In that case one Greenawalt, who resided at Atchison, wrote *Este & Schmidt*, who resided in Ohio, inquiring as to the price of certain land in Atchison county. Este & Schmidt replied stating that they would sell the whole section of land at $50 per acre. Immediately upon receipt of this letter Greenawalt wired back as follows:

"Your offer, letter March 2, accepted; have deposited ten thousand dollars to your credit in Exchange National Bank. Send deeds and papers at once. Answer." (p. 419.)

On the same day he also wrote a letter of confirmation of this telegram. In that case the court said:

"The sole question we shall consider is whether there was a contract between the parties to this action. Taking the allegations of the petition as true, as we must under the motion to dissolve the attachment, we learn that plaintiff wrote to the duly authorized agent of defendants, at Cincinnati, Ohio, stating he wished to buy defendant's land in Atchison county, describing it, and asking the price; they promptly answered they would sell for $50 per acre if they could sell all of it; he telegraphed and wrote at once that he would accept their offer, but added that he had placed $10,000 to their credit in a bank at Atchison, and for them to send on papers at once, and also in his letter. he wrote they should be paid on receipt of deeds conveying title. Under the answer to plaintiff's first letter to Este & Schmidt, agents of defendants, and their offer to sell, the purchase money was due at their office in Cincinnati, Ohio, or to them personally, and not at a bank in Atchison, Kan. This the law implied as a part of their contract as evidenced by their letter of March 2. . . . In one constituent of the bargaining the parties did not agree; we

do not know how important this may have been deemed by them; at least it was an essential element of a completed contract." (pp. 419, 420.)

The doctrine laid down in that case has been adhered to in the following decisions: *Bentz v. Eubank,* 41 Kan. 28, 20 Pac. 505; *Trust Co. v. Hardesty,* 68 Kan. 683, 75 Pac. 1115; *McCarter v. Rogers,* supra; *Wiggam v. Shouse,* 105 Kan. 637, 185 Pac. 896; *Spiher v. Johnson,* 110 Kan. 339, 203 Pac. 696; *Nichols v. Coppock,* 124 Kan. 652, 261 Pac. 574.

In *Trust Co. v. Hardesty,* supra, there were certain preliminary negotiations by correspondence and telegram between Hardesty and the agents of the owner. These finally culminated in a telegram from Hardesty on September 20 reading: "Will take land at twelve hundred; six hundred cash, six on time, six per cent interest, as agreed in your letter. Answer at once." The agents immediately sent telegram: "Will sell you land as per telegram 20th instant." The court said:

"At this point, therefore—that is, upon the sending of the latter telegram—it may be said that there was a definite proposal and acceptance, constituting a completed contract." (p. 686.)

However, up to that point nothing had been decided between the parties as to the rent for the current year. The court, continuing in the opinion, said:

"Had Hardesty at this point offered to carry out the contract according to its very terms, he doubtless would have had a right to insist upon its performance, so far as the agents were concerned; but this contract, nothing yet having been stated to the contrary, contemplated the payment of the purchase price at the home of the vendor or that of its representatives. (*Greenawalt v. Este,* 40 Kan. 418, 10 Pac. 803.) It was incumbent upon the purchaser, in order to avail himself of the contract, to comply or offer to comply with that condition. Instead of doing so, on the same day, the 20th, he wrote to Clendenin & Co. (the agents), inclosing a check for $100 and asking that the deed be made to M. Hardesty (in itself a new condition) and sent to the Bank of Hazelton. These additional requirements authorized the agents of the vendor to consider the matter still open and to impose new conditions on their own part." (p. 686.)

The appellee distinguishes the case of *McAdam v. Leak,* supra, by pointing out that in that case the purchaser made the proposition and the vendor unqualifiedly accepted it and offered to send the abstract; that to this the purchaser replied requesting a forwarding of the abstract and offering to prepare a deed and made no requirement that the deed be sent anywhere for delivery. That in the case

at bar the defendant did not accept plaintiff's offer or conditions, and that when she received the same the matter was open to her to refuse to proceed further with the deal.

It is true that a merchantable title is implied as a matter of law, as contended by appellant, but there is no implication of law that a vendor will furnish an abstract of title. That is a matter which is a proper subject of contract between the parties. Unless the vendor agrees in the contract to furnish one there is no obligation resting upon him to do so. This stipulation in the letter of April 20, written by appellant, was a new condition not previously covered in the correspondence between the parties. It must be noted in answer to appellant's contention that the contract was completed by the telegram of appellant in reply to the letter written by appellee's daughter, that this telegram contained the words: "Wire confirmation of sale if accepted or rejected, collect." This indicated that appellant did not at the time regard his telegram as effecting a completion of the bargain and sale. It was merely a negotiation. Appellee's reply in which she offered to take part cash and part on time was a continuation of the negotiations. Appellant in reply undertook to negotiate further on the new feature thus injected by appellee and wrote his letter of April 20. It proposed several new conditions, among them being the furnishing of the abstract, sending the deed to the Macksville bank and the place and method of payment. It is true that inasmuch as a merchantable title is implied, his statement "if the title is all right" did not amount to adding a new condition, because if he had a contract otherwise complete he thereby did not impose any condition except that which was already imposed by law on the appellee.

Upon a careful consideration of the petition in this case and comparing it with the tests outlined in the numerous decisions of this court hereinbefore cited, we conclude that the letter of plaintiff dated April 20, 1929, brought new terms and conditions into the deal; that a contract was not in fact entered into between the parties. We further conclude that upon receipt of the letter of April 20 the defendant had a right to treat the transaction as still open and could refuse to proceed and that her motive in so doing was immaterial. The district court properly sustained the demurrer to the petition.

The judgment is affirmed.