No. 30,051.

E. A. ORR, *Appellant*, v. H. W. RIEGER, *Appellee*.

(300 Pac. 1074.)

Opinion filed July 3, 1931.

*R. S. Field,* of Syracuse, and *H. O. Trinkle,* of Garden City, for the appellant.

*Lester Luther,* of Cimarron, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to compel specific performance of a contract to convey real estate. A demurrer to the petition was sustained, and plaintiff appeals.

Rieger, who lived in Chicago, owned a quarter section of land in Hamilton county. Baker was a real-estate broker at Syracuse in Hamilton county. As agent for Rieger, Baker found a purchaser for the land in the person of Orr, who lives at Garden City. Orr commenced the action to compel Rieger to convey.

The negotiations between Rieger and Baker were by letter and telegram. On March 15, 1930, Rieger answered a letter from Baker, and said that if Baker had some one interested in the land, Rieger would sell on stated terms. On March 27 Baker sent a telegram to Rieger stating he had shown the land and the party made an offer, which was submitted in the telegram. Rieger promptly sent Baker the following telegram: "Sell at once eight hundred cash to me clear advise." On March 28 Baker telegraphed Rieger he had "contracted the land," as per Rieger's telegram, and Baker confirmed his telegram by a letter containing the following:

"Your telegram of March 28, advising that we sell your Hamilton county quarter of land, duly received, and have made sale according to same. Here-

with find deed to the land in question partly filled in. Not knowing whether you are a single man or not, have left main body of deed in blank. You can go before a notary public and have deed properly filled in, and send same to the Valley State Bank, Syracuse, with instructions for delivery upon payment of the $800 less necessary expense of title to said land."

The deed referred to in Baker's letter was received by Rieger, and was signed by Rieger, but was not delivered. Copies of the writings, except the deed, were embodied in the petition. There was nothing in the petition to show that Rieger knew Orr was the person with whom Baker dealt. The petition contained the following allegation:

"That said communications by letters and telegrams authorized said S. J. Baker to sell, as agent for said defendant, the land described in said letter for the sum of eight hundred dollars cash, net to the owner. That this plaintiff was the buyer of said land from said S. J. Baker, as agent of the defendant, and on March 28, 1930, said S. J. Baker did, as the agent of said defendant, contract and agree to sell to this plaintiff the land herein described at and for the net price of eight hundred dollars, to be paid to the owner thereof, the defendant in this action."

The writings make Baker's position in the transaction perfectly clear. Baker was Rieger's agent to sell the land. Baker was not himself a purchaser, and he negotiated for Rieger with an undisclosed third person as the prospective purchaser. This relation of Rieger as principal to Baker as agent is pleaded in the petition, and Orr pleaded that he contracted with Baker as Rieger's agent.

The writings do not disclose authority of Baker to bind Rieger by a contract to convey.

"The inquiry to be determined in each doubtful case is whether the owner has shown an intention that his agent should merely act as an ordinary broker or that he should go further and actually effect a binding contract of sale. The great weight of authority is that the latter intention will not be inferred except from the use of unequivocal expressions to that effect, and that the terms 'sell' and 'sale' are not of that character." (*Brown v. Gilpin,* 75 Kan. 773, 783, 90 Pac. 267.)

The decision in *Brown v. Gilpin* was rendered in 1907. Between the years 1907 and 1921 the decision was approved by this court ten times. In 1922 the case of *Goldberg v. Investment Co.,* 112 Kan. 348, 211 Pac. 157, was decided. The syllabus reads:

"An owner executed a written instrument appointing an agent, exclusively, for a limited period, 'to lease' real estate for ninety-nine years, the lease to take effect on acceptance of the terms stated in the instrument. *Held,* authority of the agent was limited to finding a tenant, and did not include au-

thority to contract, or to execute a written lease, on behalf of the principal." (¶ 2.)

In the opinion it was said:

"The words 'to lease' do not of themselves indicate authority to conclude a contract of lease or to execute a written instrument of lease. In the case of *Brown v. Gilpin*, 75 Kan. 773, 90 Pac. 267, it was contended an agent appointed 'to sell' real estate had power to bind his principal by a contract of sale. The court reviewed authorities, English and American, and reached the conclusion the agency was limited to finding a purchaser. The decision was foreshadowed by earlier ones, and has since been approved and followed in a number of cases. The court still regards the decision as sound in law. Besides that social interest is involved. Real-estate brokers may conduct negotiations, and they will be protected in the matter of compensation for services rendered pursuant to authority, but the making of contracts which will carry title to real estate should be left to owners, unless they intentionally and clearly delegate the function to others." (p. 352.)

This is decisive of the case.

In his brief Orr proposes this question:

"May the appellant in this case, as the undisclosed purchaser, maintain this action against appellee for the specific performance of his agreement to sell the land?"

Rieger made no agreement to sell the land, in the sense of the question. His telegram to Baker to sell for $800 net cash merely fixed the terms on which Baker might negotiate with the prospective purchaser.

In his brief Orr contends Baker was his agent, and Orr could take advantage of Rieger's contract with Orr to sell. The contention is faulty in two respects: It is contrary to Orr's petition, and Rieger did not contract with anybody to sell.

Baker reported by telegram that he had "contracted" the land, and Orr contends Rieger ratified the contract by approving terms of sale and by stating deed would be forwarded to the Valley State Bank at Syracuse. As indicated, Rieger's telegram to sell at once for $800 cash to him clear, was merely a definition of the agent's authority to procure a purchaser. Baker replied by telegram, and the letter confirming the telegram, quoted above, said Baker had made a sale according to Rieger's terms. The letter, however, proceeded to state different terms. Rieger's telegram said nothing about details of closing the sale, and the price was payable to him in Chicago. (*Greenawalt v. Este*, 40 Kan. 418, 19 Pac. 803; *Hinish v. Oliver*, 66 Kan. 282, 71 Pac. 520; *Trust Co. v. Hardesty*, 68 Kan.

.683, 686, 75 Pac. 1115; *Wiggam v. Shouse*, 105 Kan. 637, 642, 185 Pac. 896.)

Baker's letter lugged in new conditions—the executed and acknowledged deed should be sent to the Valley State Bank at Syracuse, with instructions for delivery, and for delivery on payment of $800, less necessary expense. Rieger promptly repudiated both terms by a letter, the significance of which Baker apparently did not grasp. The letter reads:

"I have your letter 3-28-30, which letter has been sent to my home with instructions, also deed properly signed. You shall hear shortly from Chicago. Papers will be sent to the Valley State Bank, Syracuse, Kansas, via our bank at Chicago, in the proper way.

"I have abstract of property, for 160 acres, near Syracuse, and I think it is up to date, or very nearly so. Any extra cost to get it where your prospective purchaser may desire it, will be at his expense. In other words, when I am selling at such a low price, I will expect to secure untouched and full intact $800 (eight hundred dollars) finally in my hands Chicago. Let us both understand this right now, to avoid any delay in the completion of this deal."

While this letter said Baker would hear from Chicago, it did not say the communication would be one with deed inclosed. While the letter said the papers would be sent to the Valley State Bank at Syracuse, it did not state they would be sent forthwith, or ever, for delivery at Syracuse on payment of price. The letter said the papers would be sent by the Chicago bank "in the proper way." The letter then said Rieger expected to receive the full $800 finally in his hands at Chicago, a highly important condition, particularly in a period when bank failures were common. This letter was the last communication from Rieger to Baker. Baker's reply said he would see the $800 was net to Rieger; but Baker assumed the deed would be forwarded collect to Syracuse, something Rieger was not bound to do.

The judgment of the district court is affirmed.