No. 44,615

WYCOFF REALTY COMPANY, a Partnership composed of R. L. Wycoff and Richard Wycoff, *Appellant,* v. GERALD E. GROVER, *Appellee.*

(422 P. 2d 943)

Opinion filed January 21, 1967.

*Thomas C. Boone,* of Hays, argued the cause and was on the brief for the appellant.

*Corwin C. Spencer,* of Oakley, argued the cause, and *C. A. Spencer,* of Oakley, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action for specific performance of a contract for the sale of real estate. In the lower court judgment on the pleadings was entered for the defendant, resulting in this appeal. The issue is whether certain correspondence between the parties constituted a contract.

The action was commenced by the filing in the district court of Logan county, Kansas, of plaintiffs' petition in which they alleged they are partners doing business at Russell Springs, Logan county; that defendant, a resident of Modesto, California, owned a quarter section of land in Logan county; that in the fall of 1964 defendant offered in writing to sell this real estate to plaintiff partners, the offer being in words and figures as follows:

"WYCOFF REALTY CO.

"Russell Springs, Kansas.

"You may purchase or sell my NW 6-12-36, Logan Co. Ks. This offer expires Jan 1, 1965, at $6,000 all cash, net to me. There is a mortgage now against the land of <u>none</u> due about ＿＿ at ＿＿ interest. There are soil bank

acres in cultivation, and is rented for _____ delivered to market, rent share to go. The place is (is not) improved. Possession may be had on sale.

"NAME (s) Gerald E. Grover
"ADDRESS 1717 Yosemite Blvd.
Modesto, Calif."

Plaintiffs alleged they thereafter orally and in writing accepted defendant's offer, but that defendant refused to sell the real estate to them, and plaintiffs ask for specific performance of the sale contract. By an amendment to their petition they alleged their acceptance of defendant's offer to sell was in the form of a letter to defendant dated and mailed November 12, 1964, the letter being as follows:

"November 12, 1964

"Mr. Gerald E. Grover
"1717 Yosemite Blvd.
"Modesto, California
"Dear Mr. Grover:

"I have just talked to your tenant, Mr. Kistler at Colby and told him we had a long talk with you yesterday and come to a complete agreement on the sale of your quarter west of Winona.

"We agree to give you $6,000.00 for the land, net to you. Also agree to leave it in the soil bank for the contract term and pay for the Revenue stamps.

"As you mentioned yesterday, since your divorce you are having trouble locating the Abstract. If you cannot find it, I am sure a new one would not cost to much. If you find it, send it to the Logan County Abstract Co. to be brought to date or notify them to make a new one.

"When your attorney has the new deed prepared, please send it and our check to the Farmers & Merchants State Bank at Colby, Kansas for collection.

"Yours very truly,
"Wycoff Brothers
"Richard Wycoff"

Defendant filed his answer admitting his residence and ownership of the land but denying all other allegations of the petition. He expressly denied the mailing by plaintiffs and the receipt by him of the letter of November 12, 1964. Defendant filed a counterclaim against plaintiffs in which he alleged that about October 13, 1964, the plaintiffs solicited a listing for sale of defendant's real estate by means of a post card sent to defendant through the mails which card was as follows:

"What will it take to buy your land in Western Kansas, which we have listed on the reverse side of this card, all cash, net to you, if sale is made in 60 days?

"Write us on the attached card, giving us your lowest price and we will see if we can't use this in a deal.

"Price it on a cash, net to you basis, no commission to anyone.

"In writing us we will appreciate it if you will PLEASE RETURN THE ATTACHED CARD.

> "WYCOFF REALTH CO.
> "Russell Springs, Kansas"

Defendant further alleged that attached to such post card was a return card which defendant completed and returned to plaintiffs, being that pleaded by them in their petition; that thereafter in response to this reply defendant received a letter from plaintiffs dated November 6, 1964, as follows:

> "WYCOFF BROS.
> "Livestock and Farming
> "Russell Springs, Kansas

> "TELEPHONES
> "Winona TI 6-3466
> "Oakley OR 2-4008

> "November 6, 1964

"Mr. Gerald E. Grover
"1717 Yosemite Blvd.
"Modesto, California

"Dear Mr. Grover:

"Thank you for your exclusive listing of your Logan County, Kansas land (NW 6-12-36), until January 1, 1965.

"My brother and I looked at your 160 acres this morning and thought we would make you a bid. We have several non-residents wanting to buy small tracts of un-improved land.

"We feel $5600.00 ($35.00 per acre) is a fair price for this land. If you care to accept this bid, we are enclosing our check for $500.00 as good faith money.

"We are enclosing a deed for you and your wife, if married, to sign before a Notary Public and then send the deed and abstract to our bank, The Farmers & Merchants State Bank, Colby, Kansas, for collection of the balance. "If the title is good, we agree to pay this balance in fifteen days. Please have your Notary Public fill in the blanks as to names, marital status, county in California and etc.

> "Yours very truly,
> "Wycoff Brothers

"RW/mw

> "/s/ Richard Wycoff

"Encl.

> "Richard Wyocff"

Defendant alleged that plaintiffs represented themselves to be real estate brokers or agents authorized by law to accept listings for real estate but that such representation was false in that plaintiffs were not licensed real estate brokers or agents; that on November 16, 1964, defendant mailed a letter to plaintiffs stating his land was no longer for sale, such letter being as follows:

"Modesto, California
"11-16-64

"Sir:

"I have decided to take my land off the market at this time. It is not for sale.

"(s) Jerry Grover"

Defendant further pled that the alleged acceptance letter of plaintiffs dated November 12, 1964, was on terms different from those on which the land was offered and that defendant had not at any time accepted those terms; that notwithstanding plaintiffs on December 3, 1964, caused to be filed in the office of the register of deeds of Logan county an instrument entitled "Notice of Lien" wherein they recited an offer and acceptance for the sale of defendant's land, defendant's refusal to convey, and the fact that plaintiffs claim defendant's real estate; that this filing constituted a cloud on defendant's title; that plaintiffs acted fraudulently in seeking to deprive him of his real estate, causing him damage in defending his title, and he asked for equitable relief including actual damages in the sum of $275.00 and exemplary damages of $1,000.00.

In their reply plaintiffs denied they solicited a listing of defendant's real estate; they admitted they were not licensed real estate brokers or agents; they admitted sending the November 6, 1964, letter to defendant, the receipt by them of defendant's November 16, 1964, letter, and the filing of the alleged "Notice of Lien" but denied fraud on their part.

Thereafter defendant filed a motion for judgment on the pleadings upon plaintiffs' alleged cause of action against him. The court sustained this motion, entered judgment for defendant thereon, and continued the case for trial upon defendant's counterclaim against plaintiffs. Plaintiffs appeal from the entry of the aforesaid judgment on their cause of action.

Recapitulating chronologically, the pleadings reveal the following writings between the parties:

1. Plaintiffs' solicitation card (October 13, 1964)
2. Defendant's return card offer of sale
3. Plaintiffs' counter offer (November 6, 1964)
4. Plaintiffs' acceptance letter (November 12, 1964)
5. Defendant's withdrawal letter (November 16, 1964).

The pleadings admit the foregoing except defendant denies receiving plaintiffs' November 12th letter addressed to him. However,

for the purpose of defendant's motion for judgment on the pleadings, plaintiffs' factual allegation of the mailing and receipt by defendant of this letter must be taken as true.

At the outset it should be noted that although plaintiffs alleged an oral acceptance in their petition, they make clear in their brief and argument the fact this alleged oral acceptance of defendant's offer to sell was upon the same terms and conditions as those stated in their November 12th letter, the latter being the written confirmation of the oral acceptance. Indeed, plaintiffs state the crux of the lawsuit is the analysis and interpretation to be given that letter. Hence we treat the letter as the acceptance relied upon and the one determinative of this action, and we are not further concerned with the alleged oral acceptance.

It is elemental, of course, that in order to constitute a binding contract resulting from an offer to sell real estate, the terms of the offer must be unconditionally accepted (*Spiher v. Johnson*, 110 Kan. 339, 203 Pac. 696).

Plaintiffs urge that their November 12th letter constituted an unqualified acceptance of defendant's offer, creating a contract binding upon him. They argue that the mention of an abstract and place and method of payment amounted only to immaterial conditions which would not affect the validity of the acceptance. Defendant urges, and the trial court held, that these items constituted counter proposals by plaintiffs which were never accepted by defendant.

We have precedent on the subject.

In *Cox v. Chalfant*, 105 Kan. 127, 181 Pac. 548, the owner of land, in answer to an injuiry, wrote a letter to a real estate agent, stating: "I will sell the N. E. ¼ . . . for $2,800 net to me." Thereafter the agent on behalf of the owner attempted to enter into a written contract of sale of the land to another. The contract recited that upon delivery of an abstract to the purchaser he would pay the purchase price to a named bank as agent for both parties. Upon the owner's refusal to convey in accordance with the contract, the would-be purchaser brought suit against him for specific performance. Although there were other grounds for the decision, this court, in affirming judgment for the owner, had this to say:

"The terms of the contract, at least as to the abstract, the place of payment, and the mutual agency of the Elk City Bank, were not embraced in the letter." (p. 128.)

In the Spiher case, *supra,* a widow who resided in Illinois owned an undivided half interest in land in Gove county, Kansas. The plaintiff wrote her a letter of inquiry about the land stating, "I have a friend that could use it." The widow replied stating a minimum sale figure for the land. Plaintiff then sent her a telegram and a letter of instructions with a deed to himself to be signed stating he would pay the purchase price to a Gove county bank after the necessary legal steps in probate court had been completed. The widow later sold the land to another, whereupon plaintiff brought suit against her for specific performance of an alleged contract for the sale of the land. This court directed judgment for the widow, saying:

". . . if plaintiff had been frank in his first letter and had said that he desired to purchase the lands, and Mrs. Johnson had written the letter she did, his telegram and the two letters would not have constituted a contract binding Mrs. Johnson, for the reason that the so-called letter of confirmation imposed various conditions upon the other party with respect to matters about which nothing had been said in the previous correspondence. One requirement which he made has been held sufficient of itself to prevent a contract, until accepted by the seller. When the deed, abstract and other papers were satisfactory to him, he proposed to deposit the purchase money in a bank, where he lived, 'for you.' Before the correspondence would constitute a contract, Mrs. Johnson must have accepted the new conditions.

"Where nothing is said as to the place of payment, it is presumed to be where the seller lives or does business, and not where the buyer is. In this case Mrs. Johnson might well have said that she would not agree to a contract obligating her to execute a deed to be delivered upon the payment of the consideration by depositing the money to her credit in a bank a thousand miles from where she lived; and that if the money was to be deposited in a bank, she would name the bank. It sometimes happens that disputes arise after the papers have been delivered, and the purchaser immediately after depositing the consideration in his local bank brings suit against the seller and attaches the money on some claim, such as that he found a third party in possession, or that some provision of the contract has been violated by the seller, and the latter finds himself in a lawsuit brought in a foreign jurisdiction which he must defend and win before he actually receives the consideration for the sale of his lands. If defendants had made a written offer to sell the lands to plaintiff, his letter introducing a new condition would have destroyed the effect of his alleged acceptance because the defendants in that case would have had the right to accept or reject the new terms and conditions, and until they did accept there could be no contract." (pp. 341, 342.)

Finally, in *Pope v. Pine,* 131 Kan. 668, 293 Pac. 396, plaintiff's petition set up correspondence between the parties allegedly constituting a contract to sell real estate in Hamilton county, Kansas. After a preliminary exchange of negotiatory communications in

which there was no mention of an abstract of title or place or method of payment, the defendant landowner sent a telegram to the plaintiff buyer as follows:

"Will accept eight dollars per acre net cash or one-half down remainder in three years, six per cent."

Plaintiff then sent the following letter to defendant:

"April 20, 1929.

*"Mrs. Nettie Pine, Waterloo, Iowa:*

"Dear Madam—Your wire received accepting my offer for the south one-half of section 13, township 25, range 42, Hamilton county, Kansas, for eight dollars per acre net to you.

.   .   .   .   .   .   .   .   .   .   .   .   .

"I am inclosing a Kansas form of deed prepared for your signature, and will fix up the mortgage papers and send them to you for your approval. You may send me your abstract on this piece of land, and I will send it out to Hamilton county and have it brought up to date, and if the title is all right, as I have no doubt but what it is, as you perhaps had it examined when you got it, then I will be ready to complete the deal.

"You may send the deed to the Macksville State Bank at Macksville, Kan., as I do some of my business over there with instructions to them, upon payment of $1,280 in cash and mortgage of $1,280 signed by myself and wife, to turn the deed over to me.

"I will return the abstract to you, as it is customary for it to be held with the mortgage." (pp. 669, 670.)

Upon defendant's refusal to convey the real estate to plaintiff, the latter brought suit for damages for breach of contract. The lower court sustained a demurrer to plaintiff's petition. Upon appeal the same arguments were made as are made in the case at bar—that there was a complete contract and the so-called acceptance letter did not attempt to impose new terms or conditions, but merely made suggestions as to the manner of consummating the transaction. This court affirmed judgment for the defendant saying:

"It is true that a merchantable title is implied as a matter of law, as contended by appellant, but there is no implication of law that a vendor will furnish an abstract of title. That is a matter which is a proper subject of contract between the parties. Unless the vendor agrees in the contract to furnish one there is no obligation resting upon him to do so. This stipulation in the letter of April 20, written by appellant, was a new condition not previously covered in the correspondence between the parties. . . . Appellee's reply in which she offered to take part cash and part on time was a continuation of the negotiations. Appellant in reply undertook to negotiate further on the new feature thus injected by appellee and wrote his letter of April 20. It proposed several new conditions, among them being the furnishing of the abstract, sending the deed to the Macksville bank and the place and method

of payment. It is true that inasmuch as a merchantable title is implied, his statement 'if the title is all right' did not amount to adding a new condition, because if he had a contract otherwise complete he thereby did not impose any condition except that which was already imposed by law on the appellee.

"Upon a careful consideration of the petition in this case and comparing it with the tests outlined in the numerous decisions of this court hereinbefore cited, we conclude that the letter of plaintiff dated April 20, 1929, brought new terms and conditions into the deal; that a contract was not in fact entered into between the parties. We further conclude that upon receipt of the letter of April 20 the defendant had a right to treat the transaction as still open and could refuse to proceed and that her motive in so doing was immaterial." (p. 675.)

We think these cases are sound in principle; to follow them here will result in justice. Other cases of like import could be cited. However, those quoted from sufficiently illustrate why we conclude plaintiffs' November 12th letter was not an unqualified acceptance of defendant's offer to sell. Instead the letter introduced, to defendant's disadvantage, new terms and conditions not previously mentioned or agreed upon—the furnishing of an abstract of title and the place and method of payment—all of which were subject to further negotiation between the parties before a binding contract could be reached. Defendant withdrew his offer before it was unqualifiedly accepted; hence there was no contract.

The judgment appealed from is affirmed.

APPROVED BY THE COURT.