Bentz v. Eubanks.

---

CATHERINE BENTZ *et al.* v. G. T. EUBANKS.

SPECIFIC PERFORMANCE — *Sufficiency of Contract.* To constitute a contract of sale of real estate where an acceptance in writing is made on one side and an alleged acceptance in writing on the other is relied upon, the written acceptance must be of the proposition as made. If the party professing to accept introduces a variance and formulates his adoption of the offer with conditions and qualifications which essentially alter some of the constituents of the offer, or materially vary the effect thereof, there is not such an acceptance or contract between the parties as equity should adjudge to be specifically enforced.

*Error from Jackson District Court.*

On the 7th day of October, 1882, *G. T. Eubanks* filed his petition against *A. W. Bentz,* claiming judgment for $1,000 on breach of an alleged contract for the sale of a quarter-section of land situate in Jackson county; the same day summons was issued and returned "not found"; on the same day an affidavit for constructive service was filed; thereon foreign personal service was made upon A. W. Bentz; on the 5th day of January, 1883, Eubanks filed his amended petition asking judgment for damages only; on the 20th day of March, 1883, the motion of Bentz to set aside the service in the case was heard, and overruled; on the 22d day of March, 1883, Bentz, by leave of the court, filed his answer to the first amended petition; on the 29th day of March, 1883, with leave of the court, Eubanks amended his petition a second time by changing his cause of action from one for the recovery of money only, to an action for the specific performance of an alleged contract for the sale of the quarter-section of land; on the 3d day of April, 1883, trial was had, and judgment rendered in favor of the plaintiff against the defendant for specific performance; this judgment was excepted to by Bentz, and upon proceedings in error the original service was ordered to be set aside by this court, and the judgment reversed. On the 17th day of July, 1884, Eubanks filed a cost bond which was sufficient, and approved; on the 21st day of July he procured of the district judge at vacation an order reviving the action in the names of the heirs, executors and devisees of A. W. Bentz, deceased; on the 24th day of July, 1884, he filed an amended petition; on the 25th day of July, 1884, he filed a precipe for summons, which was issued and returned "not found"; on the 28th day of July, 1884, he filed an affidavit for constructive service; thereon three foreign personal summonses were issued, and all of the defendants served; on the 24th day of October, 1884, and on the 24th day of November, 1884, the defendants filed motions to set aside the service and strike the amended petition of July 24, 1884, from the files; on November 24, 1884, these motions were overruled, and

upon application of the defendants, leave was given them to answer; on the 13th day of April, 1885, the demurrers to the amended petition were overruled; on the 19th day of July, 1885, the defendants filed their answer; on the 12th day of November, 1885, publication notice was ordered against the unknown heirs of A. W. Bentz, deceased; on the 6th day of April, 1886, the case came on for hearing before the district judge, and the court, after hearing the evidence and arguments, rendered judgment for the plaintiff, decreeing that Catharine Bentz and Anna M. Parsons, executors of the last will and testament of A. W. Bentz, deceased, make, execute and deliver a warranty deed with full conveyances, conveying the land in controversy to G. T. Eubanks, subject to a mortgage for the purchase-money to be executed to the executors. G. T. Eubanks resided near Holton, in Jackson county, in this state; A. W. Bentz during his lifetime resided at Carlisle, Pennsylvania; Charles A. Cornman, the attorney in fact of A. W. Bentz, and with whom the supposed contract was made, resided at Minneapolis, Minnesota; and the alleged contract was made by correspondence. The correspondence was in substance as follows:

"HOLTON, KANSAS, March 26, 1881.—*Mr. C. A. Cornman*—*Dear Sir:* I received your letter yesterday. I have written to the man who owns the land, but have not had time for an answer. I saw the Judge Price; he said that Mr. Bentz wrote to him to sell the land; he went to Mr. Drake; asked him if he wanted the land; he said no, the land was very little and he did not want it. He wrote immediately to Mr. Bentz. Mr. Drake has told some parties that he owned the land; others he told that it belonged to heirs, to keep buyers away, and would have succeeded if I had not had Mr. Bentz's address; I want you, if you sell this land to Geo. Drake, to make him pay for it, and make him pay the cash; Drake, Hopkins and Tabor Co. are buying land; pay small amount down, the balance on long time, at low rate of interest, which they sell on harder terms; I sent a proposition a few days ago; I will send you one for myself. I will give $1,600—ten dollars per acre, $200 down, the remainder on 3, 4, and 5 years, with 8 per cent. interest, or all in five years; let me know if you accept my offer, and which one.

Yours truly,          G. T. EUBANKS."

"MINNEAPOLIS, MINN., March 30, 1881.— *Mr. G. T. Eubanks*— *Dear Sir:* I just received yours, and will answer by this postal before going to my office. Your letter offering $200 cash and balance in 4 and 5 years, at 8 per cent. interest; I accept your offer, and will write you full particulars in to-morrow morning mail; you can just tell those parties that I sold the land to you, and will send you deed to the bank. I will also write to Mr. Bentz.      CHAS. A. CORNMAN."

"MINNEAPOLIS, MINN., March 31, 1881.— *Mr. G. T. Eubanks*— *Dear Sir:* I wrote you on 30th in answer to your first offer, and on the 30th I received your second letter containing your second offer for the land. I immediately answered it by postal card, just a few minutes before the mail went out, stating that I would accept your offer of $1,600, and would write you in the morning. Now you can tell all those parties that I have sold the land to you, and I will write them. I will have deed, notes and mortgage made out right away and send them to the Holton City Bank, and will write you the same day, so that you can go there with your wife and sign the mortgage and notes before those other parties know anything about your purchasing this land, and then you can get ahead of them in that way. I only wish that you could give me $300 cash, and the balance in five years' time, at 8 per cent.; but if you cannot give me that amount, I will take the $200 cash, and the balance in four years' time, at 8 per cent., as per your offer last; probably the first would suit you better; of course I want to get as much cash as you can spare over the $200; probably I had better send to the bank two sets of notes, one four years' and the others on five years' time, just according to the amount of cash you can give me over the $200. I have sold the land to you, and of course it is all right. I have had offers from other parties, but as you have acted square and honestly in this matter of sale, I would sooner sell to you than to Drake and others. I have heard of their actions for some time past, and Mr. Bentz told me about those parties whom he calls land-sharks, as I was to see Mr. Bentz last summer. There is no other bank at Holton, or else I would send the notes to another bank if there was any. I looked on the Mercantile Agency, and don't see any other bank quoted except at Holton City, and I see that Hopkins and Taber are connected with the bank. I will try and write you the day before, so that you will be prepared to go right into the bank and demand the deed and abstract upon

payment of the land money and signing the mortgage. Don't forget to take your wife along to sign with you and save delay, so that they cannot get ahead of you to make a better offer, as I mean to sell to you. You can see that the abstract is correct, and has been examined by those lawyers as correct and certified to by them, as Mr. Bentz paid those attorneys for examining the same; and the property has been in his hands ever since, as no transfers have been made. Answer soon.                CHARLES A. CORNMAN."

"MINNEAPOLIS, MINN., April 1, 1881.— *Mr. G. T. Eubanks — Dear Sir:* I have sent you papers; that is, the deed, notes and mortgage, to T. P. Moore, cashier of the Exchange Bank, instead of the Holton City Bank. I looked on my agency directory and found this bank, which I overlooked the first time; and I thought by sending the deed there that you would like it better than at this Holton bank. I want you to attend to the matter immediately, and execute the papers properly, which I know you will do, and you can get ahead of those other parties. Yours truly,

               CHARLES A. CORNMAN."

"MINNEAPOLIS, MINN., April 2, 1881.— *Mr. G. T. Eubanks — Dear Sir:* I have this day sent in the same mail the deed, notes and mortgage to T. P. Moore, cashier of the Exchange Bank, in preference to the Holton City Bank, as I notified you last night by postal. Your letter reads, in looking over it the second time, that you agree to pay $200 cash, and the remainder 3, 4, and 5 years, with 8 per cent. interest, or all in 5 years' time, annual payments. When I wrote you last letter on March 31, I didn't understand your letter thoroughly, and wrote in great haste to inform you how I would send deeds, and what arrangements I would make with the bank, in case you would pay more hand money, so I have sent two sets of notes, in case you pay me more money. You say also in your letter that if I sell to Drake to make him pay the cash for the land, and that is why I want you to pay some more cash. I can sell this land to other parties for more cash and the balance in 1, 2, 3, 4, and 5 years' time, annual payments; and if you don't accept this offer, why, I will be compelled to sell to other parties who are bidding for the land; but I would rather sell to you, as I think you are earnest in your intentions, than to sell to some of the others who have been keeping buyers by misrepresentating the land, and also as to the rightful ownership of the same. We have been ask-

ing $10 per acre for the land, and it is worth that amount, as there are plenty of farmers who will buy this land at that price, by having them pay so much each year, for five years, on the balance, with $250 hand money; so you want to execute the mortgage and notes properly and immediately; and if not, why, notify me immediately by telegraph in a night message of not more than 10 words, and I will know what to do. This night message will be half-rate at my expense. Don't forget this, and then you can write me also, in connection with the telegram, your intentions, as I must know, as other parties will buy it if you don't accept according to your letter. Send me one-half rate night message.

Very truly yours,     CHAS. A. CORNMAN.

Minneapolis, Minnesota."

On April 12th, A. W. Bentz wired Cornman as follows: "Telegraph at once; land leased last week for five years." And upon the same day he wrote and sent the following letter to Cornman:

"DEAR SIR: Your letter is received, but too late; I have leased the land to a man near Holton, for five years; you will have to notify the person you sold the land to. I cannot sell now. I forgot to write to you; I leased it last week.

"I will let you sell Bro. William's land in Union Hancock, at Sioux City, about eleven hundred acres.

A. W. BENTZ."

On April 12, 1888, as soon as Cornman received the telegram from Bentz, he wired T. P. Moore, cashier of the Exchange Bank, at Holton, as follows: "If not delivered, do not deliver Eubanks deed until further notice." On the 13th, when Eubanks called at the Exchange Bank for the deed, he was notified by Mr. Moore "that he was instructed not to deliver the deed." Thereupon Eubanks at once wired Cornman as follows: "I accept offer. Am ready to comply with contract." On April 12th, when Cornman wired Moore, he also wrote to Eubanks, stating "that since writing his last letter he received a telegram from Bentz, telling him to wire him at once that the land had been leased for five years." In the letter he stated, among other things, "that the bank could

not deliver the deed to Eubanks until further notice, as he was under orders from Bentz to withhold the deed."

To the judgment decreeing a specific performance, the defendant excepted, and has brought the case here.

*I. T. Price, Keller & Noble,* and *Hayden & Hayden,* for plaintiffs in error.

*James H. Lowell,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On the 7th of October, 1882, and for a long time prior thereto, A. W. Bentz was the owner of the southeast one-quarter of section number thirty-two, township number six, of range number sixteen, in Jackson county. G. T. Eubanks claimed to have entered into a contract for the purchase of the same in March, 1881; he brought this action for the purpose of having the alleged contract specifically enforced; after commencing his action, A. W. Bentz died; and thereupon an amended petition was filed, in July, 1884, making his executors, heirs and devisees defendants; we therefore may treat the action as having been actually commenced, so far as the defendants are concerned, in July, 1884; the plaintiff resided near Holton, in Jackson county; A. W. Bentz in his lifetime resided at Carlisle, Pa.; but Charles A. Cornman, the attorney in fact of A. W. Bentz, and with whom the alleged contract was made, resided at Minneapolis, Minn.; the supposed contract was made solely by correspondence. The power of attorney from A. W. Bentz to Charles A. Cornman is dated August 13, 1880, and authorizes Cornman to sell "on such terms as he deems most beneficial, . . . execute deed, . . . take mortgage to secure unpaid purchase-money."

There was preliminary correspondence from Cornman to Eubanks, October 12, 1880, and March 22, 1881; and a letter from A. W. Bentz to Eubanks, February 26, 1881. These letters show that Bentz and Cornman were desirous of selling

the premises described in the amended petition. The first letter, however, which we need consider, is dated March 26, 1881, containing Eubanks's offer. He wrote to Cornman: "I will give $1,600 — ten dollars per acre — $200 down, the remainder in 3, 4, and 5 years, with 8 per cent. interest, or all in five years. Let me know if you accept my offer, *and which one.*" In answer, Cornman sent a postal to Eubanks, dated March 30, 1881, as follows: "I just received yours, and will answer by this postal before going to my office. Your letter offering $200 cash and balance in 4 and 5 years, at 8 per cent. interest; I accept your offer, and will write you full particulars in to-morrow morning mail; you can just tell those parties that I sold the land to you, and will send you a deed to the bank. I will also write to Mr. Bentz." A further answer to Eubanks's letter of March 26 was made by Cornman on March 31, 1881, in which he states, among other things: "I only wish that you could get me $300 cash, and the balance in five years at 8 per cent.; but if you cannot give that amount, I will take the $200 cash, and the balance in four years' time at 8 per cent. as per your offer last; probably the first would suit you better. Of course I want to get as much cash as you can spare over the $200; probably I had better send the bank two sets of notes, one in four years' time, and the others in five years' time, just according to the amount of cash you can give over the $200."

Again, Cornman wrote to Eubanks on April 2, 1881, and among other things said:

"When I wrote you my last letter on March 31, I didn't understand your letter thoroughly and wrote in great haste to inform you how I would send deeds, and what arrangements I would make with the banks in case you would pay more hand money. So I have sent two sets of notes, in case you pay more hand money. You say also in your letter if I sell to Drake to make him pay the cash for the land, and that is why I want you to pay more cash. I can sell the land to other parties for more cash and the balance in one, two, three, four and five years' time, and if you don't accept this offer I will be compelled to sell to other parties who are bidding for the land. . . .

We have been asking $10 per acre for the land, and it is worth that amount, as there are plenty of farmers who will buy this land at that price by leaving them pay so much yearly for five years on the balance, with $250 hand money; so you want to execute the mortgage and notes promptly and immediately, and if not, why, notify me immédiately by telegraph, in a night message of not more than ten words, and I will know what to do. This night message will be half rate *at my expense.*"

Eubanks received the postal of March 30, and the letters of March 31 and April 1 and 2, all on Saturday, the 9th of April, 1881; he lived in the country; his wife was sick on Monday; Tuesday it stormed; and Wednesday, the 13th, he and his wife went to the Exchange bank at Holton to pay the money, execute the mortgage and obtain the deed to the land. On April 12, 1881, at the instance of Bentz, Cornman had wired T. P. Moore, the cashier of the bank: "If not delivered, do not deliver Eubanks deed until further notice." After Moore informed Eubanks that he was instructed not to deliver the deed, Eubanks wired Cornman: "I accept offer; am ready to comply with contract." The postal from Cornman to Eubanks of March 30 did not inform Eubanks which offer he accepted; he said he would take $200 cash, but added: "balance in four or five years' time at eight per cent.;" the offer of Eubanks was $200 cash down, and the balance in three, four and five years, at 8 per cent. interest, or all in five years. The postal, with the qualifications stated, was not an acceptance of the exact terms offered. In the letter of March 31, Cornman asked for $300 cash, and the balance in five years, at 8 per cent., but stated if Eubanks would not give that amount, he would take $200 cash and the balance in four years' time, at 8 per cent. This letter, also, was not an acceptance of the offer of Eubanks, because it stated different terms. In the letter of April 3, Cornman notified Eubanks that he could sell the land to other parties for more than $200 cash and the balance in one, two, three, four and five years' time, annual payments; and that if he did not accept the offer, he would sell

to the other parties bidding for the land. In that letter he also stated that he wanted $250 in hand.

An offer by one party assented to by the other will generally constitute a contract, but the assent must comprehend the whole of the proposition. It must be exactly equal to its extent and terms, and must not qualify them by any new matter; therefore a proposal to accept or an acceptance of an offer on terms varying from those proposed, amounts to a rejection of the offer. "If in answer to a proposal to grant Black Acre, a person replies that he is ready to close the matter and will take White Acre, there is no acceptance. Neither is there an acceptance where executory proceedings on each side are involved in the proposal, and the party professing to accept introduces a variance and formulates his adoption of the offer with conditions and qualifications which essentially alter some of the constituents or materially vary the effect." ( *Eggleston v. Wagner*, [S. C. Mich.] 10 N. W. Rep. 37; *Burkhalter. v. Jones*, 32 Kas. 5; *Baker v. Johnson*, 37 Iowa, 188; *Hamlin v. Wistar*, [S. C. Minn.] 18 N. W. Rep. 145.)

As we view the correspondence between the parties, they contain propositions and counter propositions; but Cornman in his professing to accept, varied the terms of

Contract; acceptance; specific performance, not enforced.

acceptance from those proposed; therefore, in equity and good conscience, such a contract was not made as equity should adjudge to be specifically enforced.

The telegram from Eubanks to Cornman of April 13th was not sent until Bentz had wired Cornman that the land was leased for five years, and Cornman had revoked the authority given to Moore to deliver the deed, and had notified him not to deliver until further notice. Before this telegram was sent, Moore had also notified Eubanks that he was instructed not to deliver the deed. The acceptance of Cornman's offer by wire, therefore, was not made until after it had been withdrawn.

Again, although Eubanks received the letter of Cornman dated April 2 on April 9, and although he was specially re-

quested to answer the letter by a night message at the expense of Cornman, he did not answer the letter by wire or by writing until the 13th, and not on that day until he had been notified that the bank could not deliver the deed; therefore he did not comply with the terms of the request in the letter of April 2.

There are many other matters referred to and discussed in the briefs, but it is unnecessary to comment upon them.

The judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.