No. 27,675.

J. C. NICHOLS, *Appellant,* v. RALPH C. COPPOCK et al., *Appellees.*

(261 Pac. 574.)

SYLLABUS BY THE COURT.

1. SPECIFIC PERFORMANCE—*Contracts Enforceable—Incomplete and Uncertain Terms.* Specific performance of a contract will not be decreed where it is incomplete and uncertain in its terms.

2. VENDOR AND PURCHASER—*Validity of Contract—Meeting of Minds.* Negotiations for the purchase of real estate carried on by correspondence examined, and it is held that the minds of the parties did not meet as to material terms and conditions, and these being left for future agreement, an enforceable contract was not made.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed December 10, 1927. Affirmed.

*S. D. Scott,* of Olathe, and *Edwin C. Meservey,* of Kansas City, Mo., for the appellant; *D. J. Haff, E. C. Meservey, W. C. Michaels, C. M. Blackmar* and *S. D. Newkirk,* all of Kansas City, Mo., of counsel.

*A. L. Berger,* of Kansas City, and *John R. James,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action the plaintiff, J. C. Nichols, asked for the specific performance of a contract alleged to have been entered into with the defendants, Ralph C. Coppock and Alberta Coppock, for the sale of about twenty-six acres of land situated in Johnson county near what is known as the Shawnee Mission. The result of the action depends on the sufficiency of the plaintiff's amended petition, which sets forth the alleged contract consisting entirely of letters and telegrams. A demurrer of defendants was sustained, the court holding that the pleading did not state a cause of action nor warrant the relief asked. The correspondence between the parties, which continued from June 21, 1924, to about March 1, 1925, related mainly to a sale of the south half of the tract owned by Coppock. The plaintiff, acting in the capacity of agent, was asked to obtain this part of the tract for the Mission Hills Golf Club, and after reciting what other tracts of land had been sold for in the

Contracts, 13 C. J. pp. 263 n. 78, 290 n. 9; 6 R. C. L. 599. Specific Performance, 36 Cyc. p. 587 n. 75; 2 L. R. A. n. s. 221; 31 L. R. A. n. s. 479; 37 A. L. R. 365; 25 R. C. L. 218. Vendor and Purchaser, 39 Cyc. p. 1187 n. 56.

neighborhood, advised the defendants to sell that portion of the tract at $1,000 an acre. He argued with defendants that the sale and improvement of the south half would benefit the remaining north half, and offered to coöperate with the defendants in the platting and disposing of the north half in case a sale of the other part was made. Coppock at first declined to fix a price, as he had given his brother the right to sell the land until November 1, 1924. After a number of letters had passed between them, Coppock, on January 28, 1925, proposed to sell the south half at $1,250 per acre upon terms that were mentioned. The plaintiff responded that the price named was too high, and in another letter on February 14, 1925, he urged again the sale at the price of $1,000 an acre. A response to this letter was made on February 16, 1925, stating that they had decided not to sell one-half of the land unless they got the quoted price, namely, $1,250 per acre. In case a purchase was made at that price he stated he would have the terms "one-sixth cash, and the balance in four equal annual payments, with interest at six per cent, payable semiannually, the first payment falling due the date of sale, 1928, the balance in each succeeding year." On February 21, 1925, plaintiff wired that it would be impossible to interest the club at $1,250 per acre, and then asked defendants to wire the best price they would take for the entire tract so that plaintiff could offer the club approximately one-half at less price and retain the balance. The terms, he stated, were satisfactory, and he asked defendants to please make him a reasonable price on the entire tract. On February 25, 1925, the defendants telegraphed to plaintiff:

"Wire received. I am not anxious to sell especially north half, but from you will take $34,000 for the entire piece, being about the same rate as I priced the south half, with easy terms. If interested I will come. Must know soon on account of lease."

On February 26, 1925, the plaintiff sent the following telegram:

"Accept your proposition. Hope you come immediately. Am planning to leave for Florida Tuesday. Wire date of arrival."

Two days later the defendants wired: "Cannot be in Kansas City before next Friday or Saturday." On March 7, 1925, the defendants came to Kansas City and in an interview with plaintiff, plaintiff demanded that defendants furnish an abstract of title and a deed to the real estate and offered to pay defendants $5,666.67, being one-sixth of $34,000. The defendants refused to complete the transac-

tion. At the close of the interview defendants advised plaintiff that they would consider the matter further and advise the plaintiff as to what they would do. On April 25, 1925, they sent a telegram to the effect that they would sell plaintiff the land for $35,000, one-fifth cash, and the balance in five equal annual payments, interest at six per cent payable semiannually or would accept $34,000 as of date of acceptance, February 26, 1925, interest computed from that date and terms the same as they had given to the club on a previous sale of land to it. In answer to this proposition plaintiff wired that he already had a contract for the purchase of the land for $34,000, one-sixth cash and the balance in four equal annual payments, and was waiting for the defendants to deliver abstract and close the transaction as per agreement.

The question presented is whether the minds of the parties met. On one side it is said that the terms fixed on the proposition to sell one-half of it to the club were carried forward and became a part of the final offer for the whole of it to Nichols himself. The other side is contending that no terms were agreed upon, that only easy terms were mentioned, that "easy terms" were not to be determined by Nichols nor by the defendants, but were to be mutually agreed upon. That was the reason, it was said, why they were asked to come to Kansas City in order that the terms might be settled. The court held that the minds of the parties did not meet and that in fact no contract was made.

Did the correspondence mentioned between plaintiff and defendants create an enforceable contract? Some argument is advanced by plaintiff in support of a contention that the real estate was sufficiently described to meet the requirements of the statute of frauds. It appears to be conceded that the sufficiency of the description was not challenged in the district court, and in this appeal we are confined to a review of the rullings made by the trial court. Assuming, as we must, that the description was sufficient, the only question presented for decision is, Was there such a meeting of the minds of the negotiating parties as is requisite to the formation of a binding contract? It may be said that definiteness and certainty in an offer and acceptance are essential to the formation of a contract. So long as something remains to be settled or done in order to establish contract relations, a contract is not closed. The negotiations as between the parties herein are embraced in correspondence, and we have only

the question of law, Does it show the certainty and completeness essential to a valid contract, or were there material terms and conditions left to future agreements? If the latter is the case, the contract cannot be regarded as closed or complete. In a similar situation where the price was agreed upon for a sale of land, but the terms and conditions were not, it was held that a judgment for specific performance could not be given. It was said:

"Plaintiffs' letter to the defendant, which they contend closed the bargain and made a binding contract, shows, on the contrary, that the minds of the parties had not met upon the terms and conditions under which the deferred payments were to be made. Defendant had never stated what his desires were in respect to when, where or how the money should be paid, or the rate of interest it should draw. Some very essential conditions proposed by the plaintiffs in their letter required his acceptance before the contract for purchase and sale was complete. Until he had notified them in some manner of his acceptance, either by correspondence or by sending a deed to the bank with instructions to deliver it to plaintiffs upon the terms stated in their letter, the plaintiffs could not have been compelled to purchase had they seen fit to decline to complete the contract and notified him of the fact before his acceptance of the terms stated in their letter. In order to be a contract, it had to bind both parties." (*McCarter v. Rogers,* 104 Kan. 204, 205, 178 Pac. 621.)

The record discloses that the earlier negotiations between the parties extended from June, 1924, to February, 1925, in which many letters passed relating only to a proposed sale of the south half of defendants' land to the golf club, for whom the plaintiff was acting. At that time the negotiations between defendants and the club were dropped, the plaintiff stating that he thought it was impossible to interest the club at the purchase price named by defendants of $1,250 an acre for the south half of the land. Plaintiff then proposed negotiations between himself and defendants and asked them to make him a price on the entire tract. This was an independent and different proposition involving different subject matter and different parties, and we must look to the subsequent correspondence to ascertain whether or not a complete contract was made enforceable in a court of equity.

As we have seen, the plaintiff proposed to purchase the land himself and asked the price on the entire tract, stating that he then could offer the golf club one-half of it and retain to himself the balance. Four days later, as already stated, the defendants wired that they would take $34,000 for the tract upon easy terms and saying, "If interested I will come." What were the easy terms referred

to by the defendants? They were not defined. Who were to settle the terms? Not the plaintiff alone, nor could the defendants alone prescribe the terms. That was something to be mutually agreed upon in the future by the plaintiff and the defendants. The suggestion that if interested defendants would come to Kansas City, implied that the matter of terms might be settled when they came, and in plaintiff's acceptance he said, "Hope you come immediately." The contract was not complete. There was no concurrence of intention as to the terms. That was a matter of considerable importance in a transaction of this kind. It involved the cash to be paid, the times and amounts when subsequent payments should be made, how the deferred payments should be secured, and if by mortgage whether releases would be given to purchasers of the tract from the plaintiff, and still further, the rate of interest on the unpaid purchase money. Plaintiff claimed that "easy terms" meant a cash payment of one-sixth of the price mentioned and the balance in four equal annual payments, with six per cent interest, payable semiannually, but he does not suggest what, if any, security should be given for the deferred payments. This interpretation of "easy terms" was evidently placed on the proposal, because in a letter written earlier relating to a sale of one-half of the tract to the golf club similar terms were stated by defendants. But as already stated, a sale to plaintiff was a new proposition, distinctly different from the one relating to the sale of one-half of the tract to the golf club, and nothing in the correspondence relating to the sale to plaintiff himself indicated that the terms previously made to the golf club would be carried forward and constitute a part of the proposition for the sale of the whole tract to plaintiff.

It is fundamental that specific performance will not be decreed where the contract is incomplete or uncertain in its terms. (*Greenawalt v. Este*, 40 Kan. 418, 19 Pac. 803; *Bentz v. Eubanks*, 41 Kan. 28, 20 Pac. 505; *Young v. Schwint*, 108 Kan. 425, 195 Pac. 614; *Spiher v. Johnson*, 110 Kan. 339, 203 Pac. 696; *Wing v. Mollett*, 115 Kan. 116, 222 Pac. 88; 25 R. C. L. 218.)

It follows that the judgment of the district court must be affirmed.