No. 36,146

JOHN BARKER, *Appellant*, v. MABEL GRAINGER, H. O. THURSTIN and MRS. H. O. THURSTIN, His Wife, *Appellees.*

(149 P. 2d 625)

Opinion filed June 10, 1944.

*E. F. Ireland,* of Liberal, argued the cause for the appellant.

*H. A. Gaskill,* of Liberal, was on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action for the specific performance of a contract for the sale of real property. The trial court heard the evidence and rendered judgment for defendants. Plaintiff has appealed.

The facts disclosed by the record may be summarized as follows: H. O. Thurstin and his wife lived in Sunnyvale, Calif. He owned a residence situated on two lots in Liberal, Kan., and two adjoining vacant lots which he had acquired at a tax sale. He had listed the property for sale with Miss Mabel Grainger, a real-estate broker at Liberal, but from her listing it was not clear whether he wanted $1,500 for the house and two lots, or for all the property. On July 8, 1943, plaintiff went to Miss Grainger to buy the property. She told him she was uncertain about the price. He offered to buy the entire property for $1,500 by paying $500 in cash by the time the deal was closed and the balance in payments much like rent. She prepared the form of a contract, which plaintiff signed, and he gave her a check for $300. She testified that she told him that what she had prepared was only a temporary contract and if Mr. Thurstin was willing to sell at that price and on such terms a more complete contract would be drawn. Plaintiff denied there was any talk of a second contract. This is about the only conflict there is in the testimony. Miss Grainger sent the contract to Mr. Thurstin in a letter which in part reads:

"I have sold your property providing it meets your approval. I am enclosing a temporary contract for approval before drawing a regular contract. . . ."

Mr. Thurstin signed the contract and returned it to Miss Grainger, who then prepared a more complete form of contract which included several necessary or appropriate provisions which were left to inference or not mentioned in the first contract. She sent this to Mr. Thurstin and had it signed and then presented it to plaintiff for his signature. He declined to sign it and consulted his attorney. There was some correspondence and telegrams between plaintiff's attorney and Mr. Thurstin. Among other things plaintiff's attorney prepared what he called a supplement to the contract of July 8, which in some respects differed from the more complete contract prepared by Miss Grainger for the parties to sign. Thurstin declined to sign the supplemental contract. These negotiations appear to have closed with a telegram from Mr. Thurstin to plaintiff's attorney which reads: "Received wire today. Have decided to call the deal off."

Soon thereafter plaintiff filed this action upon the original instrument of July 8, naming as defendants Mabel Grainger as well as H. O. Thurstin and his wife.

Generally speaking, it may be said the petition stated a cause of action upon the agreement between plaintiff and Miss Grainger, acting for the defendant Thurstin, in language which differed slightly from the contract of July 8, no copy of which was attached to the petition. The differences, however, are not sufficiently important to be noticed here. It is alleged the contract had been signed by plaintiff and by Thurstin; that plaintiff had performed all the things required of him to be performed, and the prayer was that it be specifically performed. H. O. Thurstin by his answer admitted that the property had been listed for sale with Miss Grainger and that she had found the plaintiff as a purchaser; that on July 8, 1943, the temporary contract for the sale of the premises was prepared; that it was understood between plaintiff and Miss Grainger that the same was only a temporary contract and if accepted a different and more complete contract of sale and purchase would be prepared and entered into by the parties; that such a contract had been prepared and executed by Mr. Thurstin, but that plaintiff had refused to execute the same. The temporary contract, and also the one later prepared, were attached to and made parts of the answer,

and defendant pleaded his willingness to comply with and carry out the more formal contract. The record does not show that a reply was filed.

At the beginning of the trial plaintiff moved for judgment on the pleadings. This was denied, and appellant complains of that ruling. In making this motion plaintiff necessarily conceded, for the purpose of a ruling upon the motion, that the allegations of the answer adverse to those of the petition were true. There was no error in the ruling of the court on plaintiff's motion for judgment on the pleadings.

There were two hearings before the court. Pending the final hearing plaintiff and his counsel prepared an entirely new written contract, which differed in several respects from any of those previously prepared, and presented it to the defendant Thurstin for his signature, but he declined to sign it.

At the close of plaintiff's evidence each of the defendants demurred thereto. The court sustained the demurrer as to the defendants Mabel Grainger and Mrs. H. O. Thurstin. Appellant complains of this ruling. It is not contended that Mabel Grainger had any authority to execute a contract for sale on behalf of Thurstin, and in fact she did not undertake to do so, and no cause of action was either pleaded or proved against her. Mrs. H. O. Thurstin had not signed any of the contracts, and there was no error in sustaining her demurrer to the evidence.

At the close of all the evidence the trial court announced the view that the evidence failed to show that the minds of the plaintiff and the defendant Thurstin had met upon the terms of the contract of sale, and in the journal entry of judgment specifically found "that the contract sued on by the plaintiff in this case was only a preliminary contract and as such is not enforceable by the said plaintiff," and rendered judgment accordingly. This was a question of fact to be determined by the trial court. (17 C. J. S. 1276.)

We think the finding of the trial court is well sustained by the evidence; indeed, that no other finding could reasonably have been made. See *Nichols v. Coppock,* 124 Kan. 652 (and cases cited, p. 656), 261 Pac. 574. It necessarily follows that the final judgment of the trial court is correct and should be affirmed. It is so ordered.