No. 36,689

CLAUDE L. PETERSON, *Appellant*, ·v. F. L. HAGAMAN and ED KVATERNIK, *Appellees*.

(175 P. 2d 118)

Opinion filed December 7, 1946.

*Joseph H. McDowell,* of Kansas City was on the briefs for the. appellant.

*William Drennan, Otto Ziegelmeyer* and *Charles W. Lowder,* all of Kansas City, were on the briefs for appellee F. L. Hagaman.

The opinion of the court was delivered by

PARKER, J.: This was an action for specific performance of an oral contract to reconvey real estate and to quiet plaintiff's title to the land therein described. The appeal is from a judgment sustaining a demurrer to plaintiff's evidence.

The only evidence adduced at the trial was the testimony of the plaintiff himself. For that reason questions propounded to him as a witness, answers made in response thereto and objections to certain

testimony, together with the rulings of the court thereon, will be set forth at considerable length. Pertinent portions of the record with respect to the matters just mentioned follow:

"Q. Now Mr. Peterson, in 1934, did you have some transaction with the defendant, F. L. Hagaman? A. Yes, sir, I did.

"Q. And borrowed some money from him, did you? A. Yes, sir.

. . . . . . . . . . . . . . . .

"Q. And then later on, did you execute a deed to Mr. Hagaman for this property? A. Yes, sir.

"Q. And was the date of that deed 1938—April 29, 1938? A. Yes, sir.

"Q. And at that time, did you have any conversation with Mr. Hagaman concerning possession, and who was to occupy those premises? A. Oh, yes, I was to remain in possession.

"Q. And did you have any other conversation with him concerning the transaction surrounding that deed? A. Well, it was understood that it was simply to be a loan; not to be considered as a deed, but to be considered a mortgage.

"Q. And if you repaid the money, he was to have the property reconveyed —or, he was to reconvey the property back to you? A. Yes, sir, right.

. . . . . . . . . . . . . . .

"Q. Now in October, 1945, did Mr. Hagaman and you have a lawsuit in this Court? A. Yes, sir.

"Q. And at that time judgment was entered by agreement in favor of Mr. Hagaman for possession of the premises? A. That's right.

. . . . . . . . . . . . . .

"Q. 'Now on this 6th day of October, 1945,' . . . That is the judgment that was entered, is that right, Mr. Peterson? (Counsel hands paper to witness.) A. Yes, sir, that's it.

"By Mr. McDowell: I would like to offer this in evidence as Plaintiff's Exhibit 'A,' the judgment in Case No. 68405—A.

"By Mr. Drennan: No objection.

"By the Court: All right, it will be admitted in evidence.

"Q. Now on the day that this judgment was entered, Mr. Peterson, did you have a conversation with Mr. Hagaman concerning the possession and the ownership of these premises? A. Yes, sir.

"Q. All right; now tell us what that conversation 'with Mr. Hagaman was on October 6, 1945. A. Well, we had a conversation in the Court room before the matter came up.

"By Mr. Drennan: I object to this, then, your Honor, as being before the judgment and not having anything to do with the issues in this case, being before the rendition of judgment.

"By the Court: Objection sustained.

"Q. Did you have a conversation with Mr. Hagaman after the matter had been agreed upon in the Court room on October 6, 1945? A. I did.

"Q. All right, what was that conversation? A. Well, that was about December 1st, in connection with the fact that the time had elapsed.

"Q. Now by time elapsing, what do you mean? A. Well, the thirty (30)

days that was allowed me there to raise the Two Thousand Dollars ($2,000) and take up the loan.

"Q. At the time the judgment was entered into in October of 1945, the judgment provided that execution would be stayed until December 1st. A. That's right.

"Q. And the first conversation after that that you had with Mr. Hagaman, was on December 1st? A. That's right.

"Q. Now what was that conversation again? A. Well, it was in connection with raising of Two Thousand Dollars ($2,000); the loan—I hadn't been able to secure it, so I went to see him to find out if I was going to have to move.

"Q. All right, give the conversation. A. As I say, I went to report the reasons I hadn't been able to make the loan; the reasons were various ones, and I discussed them with him, and I wanted to find out if he was going to move in the matter.

"Q. And what did he say? A. He said he wasn't if I would make an effort to secure the money, that he wouldn't move, but would hold the matter open and wouldn't set any definite date as to when he might move; that he would simply hold the matter open for me to further see if I could secure a loan, which I assured him I would do, and which I did.

"Q. Did he tell you what he would do if you did? A. Yes, sir, he would set the deed over and reconvey the property to me.

"Q. Now did you have any further conversation with him after December 1st—with Mr. Hagaman? A. Yes, sir, once or twice during the month of December, I reported my progress, or lack of it, to him.

"Q. And on each of those conversations, what was it you talked about? A. The same thing. I was endeavoring to make a loan and had seen various parties and hadn't secured it, but I was still working on it.

"Q. And what was his attitude? A. The same as before; that I was to keep on making the effort to secure the loan, which I assured him I would do and did do.

"Q. And at the time this present lawsuit was filed you did tender into Court the money? A. That's right.

"Q. How much, Two Thousand Dollars ($2,000)? A. Two Thousand Dollars ($2,000).

"Q. Up to the present time, Mr. Peterson, you are occupying the premises? A. That's right.

"By the Court: Gentlemen, let me suggest this: I think the facts are that the man is living there and has possession of the property, is that true?

"By Mr. William Drennan: Yes, that's true.

"By the Court: Now then, the question of whether or not it is unlawful, of course, will be determined by the Court.

"By Mr. McDowell: Yes, sir.

"By the Court: We will probably save time with that understanding. He is there claiming adversely, whether unlawful or not, and that is the point in issue in this case.

"By Mr. Drennan: That's right.

"By Mr. Thomas: We think that is a question for the Court.

"By Mr. McDowell: With that understanding, those are the facts in the case, we have no further questions."

The judgment mentioned and described in the testimony was rendered in the district court of Wyandotte county, Kansas, on October 6, 1945, by consent of the parties thereto, who are the identical parties here. Such judgment gave the plaintiff, F. L. Hagaman, judgment for possession of the real estate now involved, stayed execution until December 1, 1945, and provided that in the event of failure of defendant, Claude L. Peterson, to deliver possession of such land on that date a writ of possession should issue ejecting him from the property.

It will serve no useful purpose to write an extended opinion on the issue raised by the appeal. Counsel for appellant with commendable candor concedes that, standing alone, an oral contract to reconvey land is ordinarily within the statute of frauds (G. S. 1935, 33-106) and unenforceable, but insists the present contract, which for purposes of the demurrer must be regarded as having been entered into in the manner and on the terms described by appellant, is without the scope of its provisions because of certain matters disclosed by the undisputed testimony. When analyzed, his claim is that since the demurrer concedes the uncontroverted facts are that Peterson was in possession of the land in question on December 1, 1945, when the contract relied on was entered into and has now complied with its conditions by paying the amount of his loan into court there has been, under our decisions, such a partial performance of the contract as to take it from under the statute and make it enforceable.

That under some circumstances performance and possession take an oral contract for the sale of real estate out of the operation of the statute of frauds is well settled law in this state. The two decisions (*Witt v. Boothe*, 98 Kan. 554, 158 Pac. 851, and *Hoppas v. Bremer*, 114 Kan. 609, 220 Pac. 251)—and many others could be cited—relied on by appellant as supporting his position, so hold. However, we cannot subscribe to his claim that they are authority for his conclusion the facts testified to by him bring the contract

within the rule of partial performance as announced therein or as recognized by our other decisions.

On examination of the record heretofore quoted it becomes immediately apparent that on the date of the execution of the contract in question appellant was not only then but for sometime prior thereto had been in possession of the real estate. Whether that situation had come about as a result of the 1934 agreement testified to by him, and which ceased to have any further effect by reason of the judgment rendered by consent on October 6, 1945, or be regarded as having originated as a result of such judgment is of little moment. The essential thing to be remembered is that he came into possession prior to the date of the execution of the contract. Appellant either overlooks this all-important bit of undisputed testimony or refuses to give it consideration in his application of the general principle of law on which he relies.

Long ago this court, in its consideration of what constitutes sufficient partial performance to authorize or justify a court of equity to decree a specific performance of a contract otherwise unenforceable under the statute of frauds, decided that possession of land, when relied upon by the vendee of a parol contract as having that effect, must have been taken and held pursuant to the contract in controversy and could not be referable to any other source.

See *Baldwin v. Squier*, 31 Kan. 283, 284, 1 Pac. 591, which states:

"But to take a parol contract for the sale of land out of the statute of frauds by reason of a delivery of possession, such possession must be notorious, exclusive, and obviously in pursuance of the contract. . ."

Likewise, *Hartshorn v. Smart*, 67 Kan. 543, 73 Pac. 73, where it was held:

"The possession of land, to constitute a part performance of a contract invalid under the statute of frauds, must be connected with the contract and not referable to any other cause." (Syl. ¶ 2.)

Also *O'Brien v. Foulke*, 69 Kan. 475, 77 Pac. 103, which holds:

"A possession, to be effective and to take an oral contract out of the statute of frauds, not only must be actual, notorious and exclusive, but it must have been taken and held in pursuance of such contract." (Syl. ¶ 1.)

And *Baldwin v. Baldwin*, 73 Kan. 39, 84 Pac. 568, where the rule is stated thus:

"In a suit to enforce a parol agreement to convey land, where possession is relied upon as part performance to take the case out of the statute of frauds, the character of the possession is of the greatest importance. It must

be notorious, exclusive, continuous, and in pursuance of the contract."
(Syl. ¶ 1.)

For further recognition of the rule stated in the foregoing decisions and interesting comments respecting various situations to which it is applicable, see *Eakin v. Wycoff*, 118 Kan. 167, 180 to 182, incl., 234 Pac. 63, and *McCracken v. Wright*, 159 Kan. 615, 626, 627, 157 P. 2d. 814.

That in adhering to such legal principle this court is in line with the great weight of authority is evidenced by the following well-recognized legal treatises and textbooks: 49 Am. Jur. 745 to 747, incl., § 440; 101 A. L. R. (Anno, 923 X 5[a] and [b]) 1011 to 1020, incl.; 3 L. R. A., n. s., 807 to 813, incl.; 58 C. J. 1007, 1008, §§ 203, 204; 2 Williston on Contracts (rev. ed.) 1430, 1435, 1436, § 494; Pomeroy's Specific Performance of Contracts (3d ed.) 286, 290, § 116, and Browne on the Statute of Frauds (5th ed.) 603, § 476.

In view of the foregoing authorities, inasmuch as the record does not reveal and it is not contended the making of lasting and valuable improvements subsequent to the contract constituted partial performance and, since it must be conceded payment alone is not sufficient to accomplish that result (*Baldwin v. Squier*, supra, and *Goddard v. Donaha*, 42 Kan. 754, 22 Pac. 708), we have no difficulty in concluding the appellant's own testimony wholly failed to sustain his claim he was entitled to specific performance of his parol contract on the ground of partial performance by possession. It follows the court was correct in sustaining the demurrer to his evidence.

As we conclude, although unnecessary to our decision, we feel constrained to add there is another sound reason for upholding the trial court's action in sustaining the demurrer to the evidence. This court is committed to the doctrine that in order to maintain an action for specific performance of a contract, required by the statute of frauds to be in writing, it is necessary and essential that the contract established by the evidence be definite and certain in its terms, conditions and purposes. (See *Wing v. Mollett*, 115 Kan. 116, 222 Pac. 119; *Nichols v. Coppock*, 124 Kan. 653, 261 Pac. 574; *Bowen v. Galloway*, 125 Kan. 568, 264 Pac. 1038; *Haston v. Citizens State Bank*, 132 Kan. 767, 297 Pac. 1061; and *Barker v. Grainger*, 158 Kan. 706, 149 P. 2d 625.) And where it is sought to enforce a parol contract for the sale of lands, claimed to be without the statute because of partial performance, the rule is the same.

Numerous other decisions to the same effect from this and other jurisdictions will be found in 65 A. L. R., anno. 7, 102, III j.

Careful examination of the appellant's testimony, which we have set forth at length for purposes of this final conclusion, convinces us that it falls far short of establishing a contract which meets the test of certainty and definiteness required by our decisions.

The judgment is affirmed.