No. 53,019

WOODROW N. ANDERSON, NORMA J. ANDERSON, *Plaintiffs-Appellants,* BOB OWEN & COMPANY, INC., ROBERT C. OWEN and MARJORIE G. OWEN, *Plaintiffs,* v. OVERLAND PARK CREDIT UNION, *Defendant-Appellee.*

(643 P.2d 120)

Opinion filed April 3, 1982.

*L. Franklin Taylor,* of Payne & Jones, Chartered, of Olathe, argued the cause and *Michael G. Norris,* of the same firm, was with him on the brief for plaintiffs-appellants.

*James T. Wiglesworth,* of Rainey & Wiglesworth, of Overland Park, argued the cause and was on the brief for defendant-appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the plaintiffs, Woodrow N. Anderson, Norma J. Anderson, Robert C. Owen, Marjorie G. Owen, and Bob Owen & Company, Inc., from summary judgment entered against them and in favor of the defendant, Overland Park Credit Union, by the Johnson District Court. Plaintiffs commenced this action for a declaratory judgment, claiming that an option to purchase contained within defendant's lease is legally unenforceable, and that defendant cannot legally exercise the option. Both plaintiffs and defendant moved for summary judgment. The trial court held that the option was valid, and entered summary judgment for the Credit Union. Plaintiffs appeal.

The facts are not disputed. The Credit Union, by warranty deed, conveyed an unimproved tract of land in Overland Park to William L. Marley and Joyce Ann Marley on October 6, 1967. On that same day, the Marleys entered into a twelve-year lease agreement, whereby they leased to the Credit Union 720 square feet of floor space in a commercial building to be built by them on the described land. The lease commenced on the date the building was completed, about February 1, 1968, and the initial term ran until January 31, 1980. The lease provided in substance that as rent the Credit Union would, concurrently with the execution of the lease, convey the described tract of land to the Marleys by warranty deed, and would thereafter pay certain annual cash rent based upon the ad valorem taxes on the property. The option provision of the lease, which is at the heart of this lawsuit, reads as follows:

"The Lessee is hereby given the option to purchase the property described in the paragraph next following and all buildings thereon, of which the leased premises is a part, at the end of the original term of this lease at a price of $93,000.00. Such option shall be exercised by the Lessee delivering written notice to the Lessor, not less than sixty (60) days prior to the end of the original term of this lease, of Lessee's intention to exercise said option. If said option is exercised, the Lessor and Lessee shall, within ten days after such exercise, execute and acknowledge in duplicate a Contract of Sale the terms thereof to be for cash upon expiration of the original lease term or upon such other conditions and terms as the parties might mutually agree."

The Credit Union went into possession of its leased space on or about February 1, 1968. It has remained in possession since that time and no issue is raised as to its proper payment of the annual cash rentals.

The plaintiffs, Robert C. Owen, Marjorie G. Owen, and Bob Owen & Company, Inc. (the Owens), presently hold legal title to the land. In 1976, however, they entered into a contract to sell the tract to Woodrow N. Anderson and Norma Jean Anderson for the principal sum of $100,000. The Andersons agreed to make a small down payment, to assume an existing mortgage on the property, and to make monthly payments to the Owens over a nine-year period. The contract provided that "existing Leases will all be honored," and it contained the following specific reference to the Credit Union lease:

"That the existing Lease with the Overland Park Credit Union grants to said Overland Park Credit Union an option to purchase the building within a given time (as shown on Lease) at a price of $93,000.00. The Buyers are fully aware of this clause in the Lease. However, the Sellers hereby agree that if the Credit Union should exercise this option, then the purchase price for Buyers herein will be lowered by $7,000.00."

K.S.A. 17-2226 sets forth a formula for determining the amount of funds which a credit union may spend to purchase real estate for its use. If such an expenditure will exceed the limitation, approval of the purchase must be secured from the credit union administrator. The statute reads:

"Credit unions may purchase real estate and improvements thereon for their use and occupancy. Without the approval of the administrator such expenditure shall not exceed five percent (5%) of the first million dollars of the total shareholdings plus three percent (3%) of the total shareholdings in excess of one million dollars ($1,000,000), plus such additional sums from undivided earnings as have been set aside for such purpose."

In the summer of 1979, the Credit Union applied to the Kansas credit union administrator for approval of its purchase of the property under its option. The administrator replied on July 23, 1979, as follows:

"My analysis of your financial statement as of June 30, 1979 shows a total allowable purchase cost for real estate and improvements (K.S.A. 17-2226) without the administrator's approval to be $71,711.48. This would exceed your option figure by $21,288.52.

"As I understand your lease, renewal of the lease calls for $300 per month. A depreciation schedule on a $93,000.00 building for 30 years calls for $258.33 per month.

"I further understand that upon purchase of the building, rental income would accrue to the benefit of the credit union members.

"In view of this, my approval of your option to purchase is hereby granted."

Shortly after receiving that approval, and in August 1979, the

Credit Union sent by registered mail addressed to the Marleys, the Andersons, the Owens, and Bob Owen & Company, Inc., written notice of the Credit Union's intention to exercise its option to purchase the land for $93,000, and it requested the owners to execute and acknowledge a Contract of Sale within ten days in conformity with the terms of the option. The notices were promptly delivered and receipt acknowledged. No contract was forthcoming.

The plaintiffs sought review of the credit union administrator's decision by the Kansas Credit Union Council. That seven-member body met on October 9, 1979. All parties to this action appeared and presented evidence. The Council conducted a full review ·of the action of the administrator, and on October 10, 1979, advised an attorney for the plaintiffs that the Council concurred with the administrator's decision authorizing the Overland Park Credit Union to make the purchase.

Next, and on October 26, 1979, this declaratory judgment action was commenced. The Credit Union answered and counterclaimed for specific performance.

In addition to the option to purchase, the lease also granted to the Credit Union an option to extend the term of the lease for one additional ten-year period, and provided that during the extended term "the Lessee shall pay to Lessor rental in the sum of $300.00 per month, payable in advance on or before the first day of each month." On February 1, 1980, and during the pendency of this action, plaintiff Woodrow N. Anderson wrote to the Credit Union as follows:

"Under the terms of the lease you owe us $300.00 per month rent, commencing February 1st, 1980. We will look forward to receipt of this payment, and will appreciate payment on the first day of the month thereafter."

After hearing all parties, the trial court, in a comprehensive memorandum decision, entered summary judgment in behalf of the Credit Union on all claims of the plaintiffs against it, and granted specific performance of its option to purchase the land, in accordance with Count I of the Credit Union's counterclaim. A final judgment was entered, and from that judgment the plaintiffs appeal.

The primary and controlling issue before this court is whether the option provision of the lease is sufficiently specific and complete to be enforceable. Plaintiffs contend that the option

does not contain all of the terms which are essential, and thus the trial court erred in granting specific performance. Specifically, they complain that it fails to set forth (1) the closing date, (2) the date of possession, (3) the type of title to be transferred, (4) the payment of taxes, and (5) the pertinent requirements governing title insurance or an abstract opinion.

We should first review some of the principles governing specific performance and the construction of real estate option and sales agreements. In *Pitts v. Marsh,* 222 Kan. 586, 567 P.2d 843 (1977), we considered a claim that a contract for sale of realty was too uncertain and indefinite to justify specific performance, and that it failed to contain certain necessary provisions. We said:

"In order for a court to decree specific performance of a contract for the sale of real estate it is necessary the evidence pertaining thereto establish its terms, conditions and purposes with definiteness and certainty. (*Peterson v. Hagaman,* 162 Kan. 222, Syl. 2, 175 P.2d 118.) The requirement of certainty in the terms of the contract extends to the parties, subject matter, purposes, consideration, place and time of performance, terms of payment and duration of the contract. (71 Am. Jur. 2d, Specific Performance, Sec. 34, p. 54.) Reasonable certainty in the terms of a contract is all that is required for a court to decree specific performance; the contract need not provide for every collateral matter or every possible contingency which might arise with respect to the transaction. (81 C.J.S., Specific Performance, Sec. 31 b, pp. 486 and 487; 71 Am. Jur. 2d, Specific Performance, Sec. 34, p. 54.)

"In the present case the contract was in writing and covered the essential requirements with sufficient definiteness for the court to understand and enforce the mutual obligations of the parties as stated in the written instrument." 222 Kan. at 587.

In *Wilcox v. Wyandotte World-Wide, Inc.,* 208 Kan. 563, 493 P.2d 251 (1972), we determined that an option had been properly exercised, and we directed the trial court to grant specific performance. In considering the issues, we said:

"It is well established in Kansas that an option agreement to sell and convey land becomes absolute and binding on both parties when the option is accepted by the vendee within the time and on the terms specified. Such an agreement will be specifically enforced if it is fairly made and for a sufficient consideration. [Citations omitted.]

"Whether equity will decree the specific performance of a contract rests in sound judicial discretion and always depends on the facts of the particular case. [Citations omitted.] Ordinarily there is no equity in releasing a party from a fair and reasonable contract into which he freely entered unless the circumstances of the case require it." 208 Kan. at 569.

"As pointed out heretofore whether equity will grant specific performance of a

contract rests in sound judicial discretion and depends on the equities in the particular case." 208 Kan. at 571.

A case somewhat similar to the one at hand is *Janssen v. North Iowa Conf. Pen., Inc. of Meth. Ch.,* 166 N.W.2d 901 (Iowa 1969). There, the plaintiffs, Mr. and Mrs. Janssen, brought action for specific performance against the North Iowa Conference Pensions of the Methodist Church to enforce an option to purchase a farm. The Iowa Supreme Court said:

"In that respect defendant pension fund argues the agreement is fatally uncertain as to, (1) when payment of the purchase price is to be made; (2) when possession is to be given; (3) who shall pay taxes; (4) whether insurance is to be carried and by whom; and (5) whether interest is to be paid.

"With regard thereto this statement in 81 C.J.S. Specific Performance § 34, p. 494, is both pertinent and informative: '*** a contract to convey land can be specifically enforced even though no certain and definite time is fixed for payment of the purchase price, at least when an obligation to pay within a reasonable time is implied; ***. Also a lack of provision for the time of payment of interest, such as annually or semiannually, does not create an important uncertainty or ambiguity; and a failure to state the time for making a conveyance does not make the contract too ambiguous, uncertain, or indefinite for specific enforcement, at least where the time of conveyance is not of the essence of the contract. So, the failure of a contract for the sale of realty to fix a definite time for consummation of the transaction does not prevent specific performance if the contractual terms are so expressed that the court can determine with reasonable certainty the parties' duties and the conditions under which performance is due.' See also 49 Am. Jur., Specific Performance, section 23, page 36.

"In Carter v. Bair, 201 Iowa 788, 208 N.W. 283, this court was confronted with the matter of specific performance arising out of an option to purchase contained in a lease. Dealing with certainty of the terms of that agreement, we stated at 201 Iowa 789-790, 208 N.W. 283: 'Nothing is said about possession; but the purpose of the contract was to put the plaintiffs in the enjoyment of the property, inferentially as a residence, for which they, as tenants, were to pay $25 per month. On exercising the option, they were to continue to pay the $25 per month, and in addition were to pay the interest, at 7 per cent, and by plain implication were to pay the taxes after the last tax payment that would become delinquent during the original term of the lease. Defendant is to have the interest. This represents the use of the purchase money. Plaintiffs are to pay interest and taxes, and we think this must be for the use of the property, and that they are entitled to continue in the possession. Nothing is said about title, but the law would imply that the defendant should furnish marketable title. Nothing is said about conveyance, but here too the law would imply a covenant to convey when the purchase money is paid. All of the essential elements of a contract are present. We think that, though many of the ordinary provisions of a contract of sale are not provided for in terms, they are such as may, and under the circumstances ought to be, supplied by intendment. Schermer v. Wilmart, 282 Pa. 55, 127 A. 315.' " 166 N.W.2d at 907-908.

In the case at hand, the Credit Union and the Marleys struck a

bargain between them. The Credit Union conveyed valuable real estate in the center of Overland Park to the Marleys, and it contracted to pay—and it paid—rent for a period of twelve years. This conveyance and promise furnished the consideration for the lease, the options contained therein, and for the space occupied by the Credit Union. The Marleys accepted the deed, built the building, and permitted the Credit Union to occupy the agreed portion thereof for twelve years.

There is no claim that the Owens did not know of the lease and the option when they acquired title. The Andersons were alerted, and entered into their contract with full knowledge of the Credit Union's rights. The Credit Union gave written notice to all interested parties of its election to exercise its option more than 120 days prior to the end of the original term of the lease. We turn now to the specific terms of the option.

The parties are properly designated. The lease, and the option as one of the terms thereof, "shall inure to the benefit of and be binding upon the heirs . . . and assigns" of the Marleys and the Credit Union. The Andersons and the Owens stand in the place and stead of the Marleys.

The subject matter and purpose is clearly expressed: To give the Credit Union the discretionary right to purchase the described real estate at a stated price.

Consideration for the option, as we have stated, was the consideration for the lease—the land conveyed by the Credit Union to the Marleys and the Credit Union's promise to pay a sum annually for twelve years. The purchase price for the land is stated: $93,000.

Time of performance is fixed. Written notice of Lessee's intention to exercise the option must be given to the Lessors, wherever they may be. This was done. It must be delivered not less than sixty days prior to the end of the original term of the lease. This, too, was done. Payment by the Credit Union was to be "cash upon expiration of the original lease term. . . ." By that date plaintiffs had instituted this action; offer of payment was in effect tendered by the August notification, and refused by the action taken by plaintiffs. An actual tender is not required when its futility is shown. See *Gardner v. Spurlock,* 184 Kan. 765, 339 P.2d 65 (1959). While a specific place of payment is not fixed in the option, payment must be *to the owners.* We do not regard the fact

that a particular physical location is not fixed in the option to be a critical omission. The closing date is in effect fixed: *upon expiration of the original lease term.*

The terms of payment are fixed: cash. The duration of the contract is likewise fixed: the option is to be exercised at the end of the original term of the lease.

The date of possession is not stated—but the Credit Union is, and has been since 1968, in the actual physical possession of that part of the premises which it leased, and its right to possession would follow the exercise of its option. On the date fixed for payment (upon the expiration of the original lease term) it was entitled to full possession of the property.

The type of title to be transferred is not specifically spelled out in the option; but as the Iowa court held in the Methodist pension fund case:

"Nothing is said about title, but the law would imply that the defendant should furnish marketable title. Nothing is said about conveyance, but here too the law would imply a covenant to convey when the purchase money is paid." 166 N.W.2d at 908.

We hold that under the facts before us, where the Credit Union is to pay $93,000 for the land, the law will require the plaintiffs to furnish marketable title, either by furnishing a current policy of title insurance or an abstract of title certified to date, at plaintiffs' option, and will require plaintiffs to furnish a good and sufficient deed when the purchase price is paid.

Taxes are not mentioned in the option, but as between grantor and grantee the payment of taxes is controlled by K.S.A. 79-1805, which provides:

"As between grantor and grantee of any land, where there is no express agreement as to which shall pay the taxes that may be assessed thereon, if such land is conveyed on or after the first day of January and before the first day of November, then the grantee shall pay the same; if conveyed on or after the first day of November and before the first day of the next ensuing January, then the grantor shall pay them. . . ."

We conclude that the *essential* elements of a contract of sale are contained within the terms of the option agreement, and that those customary but nonessential terms noted above may be implied and are imposed by law. We hold that the option is enforceable, and we see no equitable or legal reason for releasing

the owners from the obligations of contract freely and voluntarily entered into.

Plaintiffs contend that the purchase of this property, which is larger than the Credit Union's present needs for office space, violates the law. This is based on plaintiffs' construction of K.S.A. 17-2226, previously quoted, and K.S.A. 17-2204(3), which provides in substance that primary use of the funds of a credit union shall be for loans to members. The first of those statutes, however, expressly authorizes credit unions to purchase realty for their use and occupancy. Must the credit union purchase only so much space as is necessary for its present needs, without any consideration of possible future growth and requirements? We think not.

A similar issue faced the Kentucky Supreme Court in *Home Savings B'ld'g. Assn v. Driver,* 129 Ky. 754, 112 S.W. 864 (1908). In that case the court interpreted the Kentucky Constitution which provided "no corporation shall . . . hold any real estate, except such as may be proper and necessary for carrying on its business, for a period longer than five years, under penalty of escheat." The court's reasoning is persuasive, and is particularly applicable here:

"The third question is, has the association the right to erect, remodel, or own a building of more than sufficient capacity to accommodate its own business and to rent out the excess? There is nothing in the Constitution, charter of the association, or statutes placing any limitation upon the character of a building which a corporation may erect as a home in which to conduct its business. A corporation conducting a business of the character of that in which appellant is engaged naturally expects its business to grow and expand from time to time, and, in building a home, it would be exercising but a short-sighted judgment if it did not make provision for the future by building a home large enough to take care of its expanding business, and hence, even if it should build a house larger and roomier than its present needs or interests require, it would be acting clearly within the exercise of its corporate right and power. The limitation which the statute imposes is that it shall not own more real estate than is necessary for the proper conduct of its business, but it does not attempt to place any restriction or limitation upon the right of the corporation or association as to the character of building it shall erect on said real estate; and, while the Constitution and the statutes provide that no corporation shall engage in any business other than that expressly authorized by its charter, we are of the opinion that, in renting out the unoccupied and unused portions of the building so erected, the association could not be said to be engaged in any other business than that authorized by its charter. The renting of the unused portions of the building is a mere incident in the conduct of its real business. We would not say that a building association might embark in the business of building houses and renting or leasing them, but there is quite a difference in building or renting a house in which to conduct its own business and leasing the unused portions thereof for the time being, or until such time as they

may be needed by the association, and in building houses for the purpose of renting or leasing them. The one might properly be said to be the proper exercise of a power incident to the conduct of its legitimate business, whereas the other would be a clear violation of that provision of the statute which denies to any corporation the right to conduct any business other than that authorized by its charter. To hold otherwise would be to charge most of the banking institutions, trust companies, and other corporations, such as title guaranty companies, etc., doing business in the state, and especially in the large cities, with violating the law; for it is well known that there are few of such institutions that do not, at times, rent out or lease the unneeded portions of the building occupied by them as homes. We do not think that in so doing they are violating any provisions of the law, but that the renting out of the unused and unoccupied portions of their buildings is but an incident in the conduct of their business." 129 Ky. at 762-764.

We conclude that the Kansas statutes should not be so narrowly construed as to limit a credit union, in the purchase of a site for its office, to the exact present space needs of the organization and to require it in future years to buy small pieces of adjoining land and construct thereon one room at a time as it grows. Statutes must be construed with reason, considering the practicalities of the subject matter addressed. We hold that the legislature did not intend to limit a credit union, in purchasing property for its use and occupancy, to its present needs with no view to the future. The fact that some space which is presently not needed may be rented to others will inure to the benefit of the Credit Union membership, and appears entirely consistent with the statutes cited, and with the latest expression of the legislature, K.S.A. 17-2204(12). That subsection was added in 1981. It reads:

"Every credit union incorporated pursuant to or operating under the provisions of this act may exercise such powers, including incidental powers, as shall be necessary or requisite to enable it to carry on effectively the purposes and business for which it is incorporated."

Next, plaintiffs argue that the purchase of this real estate violates the Credit Union's by-laws. The by-laws provide that the Credit Union may invest its monies "as provided by Kansas Law." Plaintiffs' argument on this point is premised upon their contention that the acquisition of this property is contrary to law, which we have already decided adversely to plaintiffs' claim. The argument has no merit.

Plaintiffs claim that the decision of the credit union administrator and the Kansas Credit Union Council was arbitrary and capricious. The trial court held that plaintiffs have no standing to raise this issue. Without deciding the question of standing, and

looking to the merits of the claim, it is apparent that the administrator and the Council afforded plaintiffs, as members of the Credit Union and as lessors, a full and complete hearing, considered carefully the issues including the statutes and the effect of the proposed action upon the Credit Union's membership, and decided the issue adversely to the plaintiffs. There is absolutely no indication of fraudulent, arbitrary, or capricious conduct; on the contrary, the administrative order is supported by the evidence and is within the scope of the administrative authority of both the administrator and the Council. We find no error.

Finally, plaintiffs contend that K.S.A. 17-2226 is an unconstitutional delegation of *legislative* power or, in the alternative, an invalid delegation of *administrative* authority. This claim was not presented to the trial court. In the original petition and in the amended petition, plaintiffs claimed that the same statute was unconstitutional as an improper delegation of *judicial* power. The latter issue was not briefed, was not determined by the trial court, and is not presented here. It is well settled that a point not raised before, or presented to, the trial court cannot be raised for the first time on appeal before this court. *Fleming v. Etherington,* 227 Kan. 795, Syl. ¶ 7, 610 P.2d 592 (1980). Since the constitutional issue now raised was not presented to the trial court, and since a determination of the constitutionality of the statute is not necessary and essential to a determination of this controversy, we decline to entertain the issue. See *State v. Nelson,* 210 Kan. 439, 443, 502 P.2d 841 (1972), and cases there discussed.

The order of the trial court granting summary judgment to the Credit Union on all claims of the plaintiffs, and ordering specific performance of the option agreement, is eminently correct. The judgment is affirmed.